## THE KING *vs.* ANGEE and AH HUNG.

EXCEPTIONS TO ORDER OF McCULLY, J.

HEARING, APRIL 1, 1891. DECISION, APRIL 13, 1891.

JUDD, C.J., McCULLY, BICKERTON, DOLE, JJ.

The judicial oath in use in our courts is a legal oath.

It is sufficient in an indictment for perjury to allege that the defendant was "duly sworn," without setting forth the form in which the oath was administered.

In an indictment for perjury, if the sworn statement alleged to be false is so related to the issue or the "material fact to be proved" as to tend circumstantially to its proof, it is sufficient.

OPINION OF THE COURT, BY DOLE, J.

The defendants in these two cases have demurred to indictments charging them respectively with perjury, committed as witnesses in the examination of one Ah Wai upon a charge of arson, before Wm. Foster, Esq., Police Justice of Honolulu.

The grounds of demurrer are substantially identical in both cases.

The first ground is as follows:

"Defendant denies that, as a matter of law, William Foster, Esq., before whom, as District and Police Justice of Honolulu (as alleged in said indictment) the false swearing of and by this defendant, set forth in said indictment, is therein alleged to have been done and committed, had, at the date therein named, to wit, the fith day of August, 1890, any legal authority to administer to this defendant such oath as is described in such indictment; and defendant denies that the administration of such oath to this defendant, by said William Foster, was then and there required or authorized by law."

This appears rather to be an objection to the legality of the oath said to have been administered than to the general author-

ity of the Police Justice to administer a legal oath. It is denied that the Police Justice had, at the time referred to, "any legal authority to administer to this defendant such oath as is described in said indictment." This, we gather from the argument of the defendant's counsel, refers to a supposed form of oath set forth in the indictment; but the form of oath is not therein set forth, the allegation being simply that the witness was then and there duly sworn by said William Foster, District and Police Justice as aforesaid, to tell the whole truth, and nothing but the truth relative to the issue, etc. The words "duly sworn" cover the distinctive nature of the oath as an oath, and with the words which follow, i. e., "to tell the truth, the whole truth, and nothing but the truth," make a sufficient allegation that a legal oath, if such exists, was administered in due form. 2 Archbold's Crim. Pr. & Pl., 1723, n. i.

It is further denied "that the administration of such oath (as described in the indictment) to this defendant by said William Foster, was then and there required or authorized by law."

We feel that this point is also met by our foregoing ruling that the oath is not described, and that the allegation is in effect that it was administered in due form; but, inasmuch as the defendants' counsel has raised under this part of the demurrer the whole question as to the existence of a legal oath under which witnesses may be sworn in this country, we will consider it now instead of leaving it to come up later in the proceedings.

The defendants' argument, that because we have no common law offenses we are therefore precluded from the use in our practice of any common law definitions which go to make up the description of a criminal offense, is untenable. Many words are necessarily used in defining crimes which are of a technical character, with meanings derived sometimes from usage, sometimes from the common law, and sometimes from judicial decisions. The contention that we must go to our statutes for the definitions of all words which themselves are used in defining crimes is simply impracticable. Such a requirement would encumber our law books with vast stores of, for the most part, un-

necessary definitions, and would defeat many of our existing laws, as it would certainly destroy the statute of perjury. The following are a few of the many technical words to be found in our criminal statutes, and which are not defined by legislative enactments in this country: *Convert*, in the statute of Embezzlement; *Homicide*, in Duelling; *Cohabit*, in Polygamy; *Duress*, in Extortion; *Animal*, in Cruelty to Animals; *Witness*, in Perjury; *Compound*, *Deposition* and *Testimony*, in Obstructing and Perverting Justice; *Confederacy*, in Conspiracy.

The meaning of the word "oath" in the statute of Perjury is as definitely established by usage in this country, not to speak of that of the rest of the civilized world from ancient times, as is the meaning of the word "witness" in the same statute and in the other parts of the Criminal Code, or the meanings of any of the other words above-mentioned. Usage may be resorted to for the purpose of interpreting words of a statute where their meaning is uncertain. Civil Code, § 9.

"Where the statute, speaking on some points, is silent as to others, usage may well supply the defect, especially if it is not inconsistent with the statutory directions, where any are given; or where the statute uses a language of doubtful import, the acting under it for a long course of years may well give an interpretation to that obscure meaning, and reduce that uncertainty to a fixed rule, *optimus leges interpres consuetudo*, which is sometimes termed *contemporanea expositio*." Lord Brougham, in *Magistrates of Dunbar vs. Duchess of Roxburghe*, 3 Cl. & Fin., 283.

The oath in common use in the courts of this Kingdom is the one meant by all of our statutes which refer to judicial oaths, and is thereby, both by the courts and the statutes, recognized as a legal oath.

To the defendants' contention that the allegation of the indictment that the "oath was then and there required by law, and the requiring of it was then and there authorized by law," being stated conjunctively instead of disjunctively, as in the statute, is bad unless the statutes show an express mandate to the justice in question to administer the oath, we answer that

the point is immaterial; it is sufficient if, consistently with the statute, the oath is found to be required by law, or the requiring of it authorized by law.

We therefore overrule the first ground of the demurrer.

The second ground is: "It does not appear from said indictment that the facts or allegations to which, as said indictment charges, this defendant falsely swore, as therein set forth, were material to the issue then pending, as described in said indictment."

The law in this regard is that the statements alleged to have been falsely sworn, and thereby constituting the crime of perjury, must be alleged to be material to the issue in which they were given, or they must appear to be material from the nature of their information. "I do not mean that the particular fact sworn to must be immediately material to the issue, but that it must have such a direct and immediate connection with a material fact as to give weight to the testimony on that point." *State vs. Hattaway*, 2 N. & McC., 118; 10 Am. Dec., 580; 4 Crim. Def., 375. The indictment alleges that it was "a material fact to be proved that said Ah Wai, on, to wit, the 28th day of July, 1890, and in the night time of said day, did unlawfully, willfully and maliciously set fire to and burn the dwelling-house of one Ahung, situate in Honolulu aforesaid, which said dwelling-house was then and there occupied by and had as its inmates said Ahung and others." If this charge had been proved against Ah Wai, it would have convicted him of arson in the first degree.

The indictment against Angee charges that in the examination he stated under oath that "he, said Angee, lives in house adjoining said Ahung. That he, said Angee, was at home on the night of July 28th, 1890; that he, said Angee, saw a fire and ran out; that he, said Angee, saw said Ah Wai standing at the makai Ewa gate; that the house on fire was the one nearest to that gate and was Ahung's house; that the blaze was underneath the house; that when Ah Wai saw him, said Angee, said Ah Wai ran; that the said Angee cried out, 'Ah Wai, you set the house on fire;' that the said Ah Wai then threw a kerosene

bottle at him, said Angee, which said bottle hit against the wall and broke; that said Ah Wai tried to open the said gate and run out, but he, said Angee, ran and seized said Ah Wai by said Ah Wai's side; that Ah Wai then struck him, said Angee, with a knife and knocked him, said Angee, down, and then he, said Ah Wai, escaped. That said house was then and there occupied by said Ahung and others;" and makes the following assignments of perjury:

" Whereas in truth and in fact the said Ah Wai was not on the night of said July 28th, 1890, standing at said makai Ewa gate; that said Ah Wai did not throw a kerosene bottle at said Angee; that said Angee did not seize said Ah Wai by his, said Ah Wai's, side; that said Ah Wai did not strke said Angee with a knife or otherwise, nor did said Ah Wai knock said Angee down, nor did said Ah Wai run away from said premises. And whereas, in truth and in fact, said Ah Wai was not on said premises at all during the night of said July 28th, or morning of July 29th, aforesaid, and that said Ah Wai did not set fire to said dwelling house of Ahung as aforesaid, all of which the said Angee then and there well knew."

The sworn statement charged to be false in Ahung's indictment, and upon which perjury is assigned, agrees substantially with this.

It is clear to us that the allegations of the evidence of defendants upon which perjury is assigned, in each indictment, contain statements which are pertinent to the issue recited, *i.e.*, that it was "a material fact to be proved that said Ah Wai on, to wit, the 28th day of July, 1890, and in the night time of said day, did unlawfully, willfully and maliciously set fire to and burn the dwelling house, etc." The alleged evidence by both of the defendants that they saw Ah Wai on the night in question on or near the premises where the fire was said to have taken place, and at the time it was said to be burning, that an effort was made by Angee to arrest him, and that he resisted with force and ran away, and Angee's additional statement that he, Ah Wai, threw a kerosene bottle at him, have certainly such a direct and immediate connection with the " material fact to be

proved" as to give weight to the testimony on that point; and assignments of perjury being made as to these statements, they are sufficient. This is in accordance with the authority of *Donahue vs. State*, 14 Texas, 638, and 4 Crim. Def., 383, cited by defendant's counsel in favor of his position, although it would appear from certain dicta of the decision in that case standing alone, that the indictment must specifically allege in stating the evidence upon which perjury is assigned, that it is material. It is sufficient if such evidence is pertinent to the issue or "fact to be proved" elsewhere alleged to be material.

The second ground of demurrer is therefore overruled.

The third and fourth grounds of the demurrer are also overruled. They are as follows: It does not appear with reasonable certainty from said indictment what premises are referred to, wherein the said indictment charges that "in truth and in fact said Ah Wai was not on said premises on said night," nor does it appear what gate is referred to in and by the phrase, "the makai Ewa gate" in said indictment contained, and "it is otherwise uncertain and doubtful from a reading of said indictment what place or locality is therein referred to, as the place at which, as alleged therein, defendant falsely swore to having seen Ah Wai and to have seen one Angee struggling with said Ah Wai on the night of July 28, 1890."

We think that the indictments furnish sufficient information on these points, inasmuch as they clearly allege that Ah Wai was charged with setting fire to Ahung's dwelling house situate in Honolulu and occupied by Ahung and others, and that the defendants testified to having seen Ahung's house on fire on the night in question, and to seeing Ah Wai near to the burning house under the suspicious circumstances mentioned.

The decision excepted to included also the case of *The King vs. Ah Fook*, which case we dispose of in a separate opinion, *post*, page 265. As to the two cases before us, that is, *The King vs. Angee*, and *The King vs. Ahung*, the decision of the Court below is sustained.

*Deputy Attorney-General Creighton*, for the Crown.

*C. W. Ashford*, for defendant.