RUHLAND, Appellant, vs. COLE, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*September 15—October 4, 1910.*

*Libel: Newspapers: Discussion of public matters: Charges of criminal conduct: Intimidation of witnesses in proceeding to revoke liquor license.*

1. Words published in a newspaper concerning the appearance of plaintiff (a brewer) before a city council to oppose the revocation of the liquor license of a third person, in which it was suggested, among other things, that plaintiff was interested in the matter contrary to "the law that brewers cannot take out a license to run a saloon," and that the brewing company dominated the council on that occasion and was "bigger than the en-

tire city government," and which also stated that John Barley-
corn was "bigger than the entire city government," are *held* not
libelous.

2. A statement in such publication with reference to the proceeding
before the council that "the wheels of government stopped to
oil up again for another session of the trial," is *held* not capa-
ble of the meaning ascribed thereto by innuendo that plaintiff
had corruptly influenced members of the council.

3. In libel the alleged defamatory words must be capable of the
meaning ascribed to them by the innuendo.

4. Editors or publishers in their newspapers may take part in the
discussion or debate of public matters with the same freedom
as other citizens.

5. In newspaper publications concerning matters of public interest,
untruthful accusations of crime or untruthful insinuations of
criminal conduct, or untruthful or scandalous or defamatory ex-
pressions tending to subject the person written of to public ridi-
cule, hatred, or contempt, are libelous.

6. To procure a warrant to be issued against a person who is a wit-
ness in a proceeding before a city council to revoke a retail
liquor dealer's license, for the purpose of intimidating that wit-
ness in giving his testimony in such proceeding, is a misde-
meanor at common law.

7. A publication falsely charging one with having caused warrants
to be issued for persons summoned as witnesses in a proceeding
for the revocation of a retail liquor dealer's license with the in-
tent to intimidate such witnesses and so deter them from testi-
fying, is libelous.

'APPEALS from an order of the circuit court for Sauk
county: E. RAY STEVENS, Circuit Judge. *Affirmed in part;*
*reversed in part.*

Cross-appeals from an order sustaining a demurrer for in-
sufficiency to the first and second causes of action and over-
ruling a like demurrer to the third and fourth causes of ac-
tion contained in a complaint for libel.

The cause was submitted for the plaintiff on the briefs of
*Grotophorst, Evans & Thomas,* and for the defendant on the
briefs of *Bentley, Kelley & Hill.*

Among other references upon the part of the plaintiff were
the following: *Scofield v. Milwaukee F. P. Co.* 126 ,Wis. 81,

105 N. W. 227; *Pfister v. Sentinel Co.* 108 Wis. 572, 84 N. W. 887; *Moley v. Barager,* 77 Wis. 43, 45 N. W. 1082; *Muetze v. Tuteur,* 77 Wis. 236, 46 N. W. 123; *Monson v. Lathrop,* 96 Wis. 386, 71 N. W. 596; *Buckstaff v. Viall,* 84 Wis. 129, 54 N. W. 111; *Hamlin v. Fantl,* 118 Wis. 594, 95 N. W. 955; *Dabold v. Chronicle P. Co.* 107 Wis. 357, 83 N. W. 639; *Robertson v. Edelstein,* 104 Wis. 440, 80 N. W. 724; *Elmergreen v. Horn,* 115 Wis. 385, 91 N. W. 973; *Benedix v. German Ins. Co.* 78 Wis. 77, 47 N. W. 176; *Werner v. Ascher,* 86 Wis. 349, 56 N. W. 869.

Among other references cited upon the part of defendant were the following: *Smith v. Utley,* 92 Wis. 133, 65 N. W. 744; *Filber v. Dautermann,* 28 Wis. 134; *Egan v. Semrad,* 113 Wis. 84, 88 N. W. 906; *Kraus v. Sentinel Co.* 60 Wis. 425, 19 N. W. 384; *Cramer v. Noonan,* 4 Wis. 231; *Platto v. Geilfuss,* 47 Wis. 491, 2 N. W. 1135; *Gillan v. State Journal P. Co.* 96 Wis. 460, 71 N. W. 892; *Solverson v. Peterson,* 64 Wis. 198, 25 N. W. 14; *Massuere v. Dickens,* 70 Wis. 83, 35 N. W. 349; *Docter v. Riedel,* 96 Wis. 158, 71 N. W. 119; *Birdsall v. Birdsall,* 52 Wis. 208, 8 N. W. 822; *Benz v. Wiedenhoeft,* 83 Wis. 397, 53 N. W. 686; *Pandow v. Eichsted,* 90 Wis. 298, 63 N. W. 284; *Clute v. Clute,* 101 Wis. 137, 76 N. W. 1114.

TIMLIN, J.   Matter of inducement contained in the first five paragraphs of the complaint and made applicable to each count averred that plaintiff was a resident of Baraboo engaged in conducting a brewery, and the defendant a resident of the same city engaged in the publication of a daily newspaper called the Evening News, having a large circulation, etc.   Plaintiff had been an alderman of Baraboo, is a member of the board of supervisors for Sauk county, and enjoys a good reputation.   The Ruhland Brewing Company is a Wisconsin corporation, of which plaintiff is secretary and treasurer and owns all the stock and alone controls the af-

fairs and general business thereof. Plaintiff's sister owns a building in Baraboo occupied by one John Harris as lessee, who conducts a retail liquor business therein. About February 1, 1910, a proceeding was commenced before the common council of Baraboo to revoke the liquor license of this Harris because of alleged illegal sales of intoxicating liquor by him at his said place of business to certain minors, and this proceeding was pending before the common council on February 24, 1910. The plaintiff was present at the meeting of the common council on that evening and Harris appeared, denied the charge, and the proceeding to revoke his license was adjourned until February 28, 1910.

Following this the first cause of action attempted to be set forth avers that on February 25, 1910, the defendant in his said newspaper wrote, printed, and published of and concerning the plaintiff the following false, libelous, and defamatory matter in an article entitled: "Just a Few Questions," to wit:

"There is a law that brewers cannot take out a license to run a saloon. Why is the Ruhland Brewing Company so interested in the Harris case? Who owns the saloon? Looks queer, doesn't it? What right had *Charles Ruhland* to speak at the council meeting? *Charles Ruhland* was once an alderman and is now a member of the Sauk county board of supervisors. The average citizen would suppose that he believed in protecting the peace and dignity of the state. He undoubtedly thinks John Harris guilty, else he would not cause warrants to be issued against the minors. What do you think of that?"

This is followed by an innuendo reciting that by this statement was meant that plaintiff had violated the laws of the state of Wisconsin relative to liquor licenses, etc., and that this defamatory matter so written, composed, printed, published, and circulated by the defendant brought the plaintiff into social disgrace, public distrust, hatred, ridicule, and con-

tempt, and was so understood by divers persons, to the damage of the plaintiff.

The second separate cause of action charges in the same form the publication on the same day of the following:

"What kind of sand are those aldermen standing on who first voted to go on with the case and then after receiving a Shakespearian pound of flesh broadside from the John Barleycorn attorney, decided to continue the matter. If the city council permits a brewing company to come in and run the business for them, why not invite Cannon, Aldrich, and the Steel trust. Is the council controlling John Barleycorn or is John Barleycorn boss of the council?"

Also another like publication in the same paper of an article entitled: "A Splendid Farce at City Council," with a headline as follows: "The Ruhland Brewing Company bigger than the entire city government." Also under this headline: "John Barleycorn is bigger than the entire city government." By innuendo this is charged to mean that the plaintiff is the personification of malt liquor and a drunken, contemptible sot, and to liken him to that worthless, drunken, lawless, and detestable character ordinarily called in popular parlance John Barleycorn, to plaintiff's damage.

The demurrer to the foregoing counts was properly sustained. The published matter charges no crime against the plaintiff. The hearing before the common council was for the purpose of examining and deciding the question of revocation of the license and in this proceeding the public is interested. It cannot be said that because the plaintiff was a brewer and could not by law take out a license to run a saloon, but nevertheless was interested in the case, opposed the revocation of the license, and spoke at the council meeting, or caused warrants to be issued against minors, that the publication of such matters would tend to subject the plaintiff to public distrust, hatred, ridicule, or contempt. The publication set forth in these two counts does not go beyond the or-

dinary limits of argument. It is suggested by interrogation that the plaintiff was not impartial, that he had no right to speak at the meeting, that his conduct seemed strange, and that he no doubt believed Harris guilty of selling liquor to minors. The second count refers more particularly to a lack of fairness on the part of the aldermen who first voted to go on with the case and then, after hearing the argument of the attorney opposed, decided to continue the matter. This argument is ambiguously and eloquently described as "A Shakespearian pound of flesh broadside," and the lawyer is referred to as "the John Barleycorn attorney." This last does not relate to or concern the plaintiff. The defendant wishes to know whether the council is controlling John Barleycorn or John Barleycorn is boss of the council. We must assume that this proper name is used in the usual manner as a personification of intoxicating liquor and is not intended to designate the plaintiff. The remaining expressions, "The Ruhland Brewing Company bigger than the entire city government," contained in the headline, and the words in the body of the article, "John Barleycorn is bigger than the entire city government," we are convinced are not libelous. It is neither criminal nor contemptible to be big or to exceed in size the city government. "Bigger," as it is here used, means more powerful. But it suggests no improper acquisition or exercise of power. Editors or publishers of newspapers may in the columns of their papers argue in opposition to or in advocacy of any public measure like other citizens, and in doing so they are not confined within narrow limits, but outside of the restrictions of the libel law the whole compass of eloquence, imagery, and logic is available to them. They may enter the lists of debate armed with all the weapons in the arsenal of logic, embellished with all the ornaments in the gallery of rhetoric. As was humorously but not inaccurately said in *Berry v. Georgia,* 10 Ga. 511, 523:

"Here, under the fullest inspiration of excited genius, they may give vent to their glowing conceptions, in thoughts that

breathe and words that burn. Nay more, giving reins to their imagination, they may permit the spirit of their heated enthusiasm to swing and sweep beyond the flaming bounds of space and time—*extra flammantia mœnia mundi.*"

In this illimitable field for the exercise of their talents they have only to avoid untruthful accusations of crime or untruthful insinuations of criminal conduct and such untruthful, scandalous, and defamatory expressions as would subject the person written of to public ridicule, hatred, or contempt.

The third cause of action sets forth the same words that appear in the second cause of action and in addition the following:

"Everybody in town expected that the license would be revoked, even the saloonkeepers themselves said so. Then why did the council make a farce of the whole matter?"

Also the following:

"A Splendid Farce at City Council—Much Wrangling of Lawyers and General Confusion—Only One Witness was Examined—The Ruhland Brewing Company bigger than the entire city government. John Barleycorn is bigger than the entire city government. That has been the opinion of many for several years and it was most emphatically expressed at the city council meeting on Thursday night. During the examination of the first witness in the John Harris case, the Ruhland Brewing Company put down its foot, there was much wrangling of lawyers, the members of the council were threatened and the wheels of government stopped to oil up again for another session of the trial. After the regular business had been transacted Mayor Hull called the Harris case, the question being the revoking of his license on the complaint of selling to minors. Alderman Altpeter made the first move on the checkerboard by asking if the complainant, S. W. Kenyon, had furnished a bond to cover costs. While Mayor Hull and City Attorney John M. Kelley held a little conference, Alderman Risley told the council that Alderman Altpeter was out of order, because, if a bond was desired, it should have been asked before the summons was issued. City Attorney Kelley then read the law and said that the bond for the costs should have been asked before the summons was

issued.    Alderman Altpeter thought it strange that a bond
had not been exacted.    Alderman Welk replied that the
council had not asked anything of the kind and that it was
not to be expected.    Alderman Jacobs said that it had not
been asked and supposed that it was not requested.    Alder-
man Thuerer then asked if it would be proper to go on with
the case, and when assured that it would moved to proceed.
It was seconded by Alderman Altpeter and carried by unani-
mous vote, all of the aldermen being present. . . . Only a
small part of what was said and done is here given.    It is
impossible to narrate all of the threats, abuse, and insinua-
tions that were handed out.    All in all it was a grand farce.
The council permitted the attorney for the Brewing Com-
pany to come in and stay the whole proceeding when the at-
torney himself acknowledged that he did not represent Har-
ris.    It was the same old farce as before.    For one night the
Brewing Company was bigger than the city council."

This is followed by an innuendo to the effect that it was
meant thereby that the plaintiff had unlawfully bribed, cor-
rupted, and improperly influenced members of the common
council, etc.

We cannot agree with the learned circuit judge that there
is anything to libel the plaintiff in this publication, much less
that it insinuates or means that the plaintiff had unlawfully
bribed, corrupted, or improperly influenced the members of
the common council.    There is the suggestion that the brew-
ing company, and through it the plaintiff, had great influence
on the common council or dominated the common council on
the occasion in question, but not by improper or unlawful
means.    It is suggested that the statement that "wheels of
government stopped to oil up again for another session of the
trial" contained some insinuation of corrupt dealing, but
judging from the context above and the words themselves
this does not appear plausible.    We do not think these words
are capable of the meaning sought to be given to them by the
innuendo.    The writer probably referred to drinking of in-
toxicating liquors by the officers during the adjournment.    So

far as the third count is concerned the demurrer should have been sustained.

The fourth count avers the publication at the same time in the same manner of the following:

"A Splendid Farce at City Council." "Mr. Kenyon then said he understood there were warrants in the room to arrest all the boys in the case. (He was partly right, *Charles Ruhland* had caused warrants to be issued for part of the boys, no doubt to frighten them.) . . . If the Ruhland Brewing Company desired to know the evidence, why has *Charles Ruhland* sworn out warrants for several of the minors? . . . *Charles Ruhland* was once an alderman and is now a member of the Sauk county board of supervisors. The average citizen would suppose that he believed in protecting the peace and dignity of the state. He undoubtedly thinks John Harris guilty else he would not cause warrants to be issued against the minors. What do you think of that?"

"Meaning thereby that this plaintiff, knowing said Harris was guilty of the offense of selling liquor to minors in violation of law, had abused the process of a criminal court of the state of Wisconsin for the purpose of intimidating said minors to prevent them or any of them from testifying in the proceedings before the council to revoke the license of said John Harris as a retail liquor dealer, and that plaintiff was guilty of obstructing public justice, and meaning the plaintiff so abused the process of a criminal court of this state without cause, justification, or excuse, and that the said minors were guilty of no offense whatever and the action of plaintiff was groundless and malicious, and that he had in fact warrants to issue to suppress the testimony of said minors and to aid the said Harris in evading the laws of Wisconsin and to assist him in defeating public justice in said proceeding to revoke the Harris license, and by such false, libelous, and defamatory matter brought the plaintiff into social disgrace, public distrust, hatred, ridicule, and contempt, and the matter so published and circulated by defendant was so understood by

divers persons who read the same both within and without the state of Wisconsin," to the injury of plaintiff, etc.

The matter here charged is libelous.

"The doing of any act tending to obstruct the due course of public justice has always been held indictable as a misdemeanor at common law. Bribing, intimidating, or persuading a witness not to testify, or not to attend court, are each among the readiest and the most corrupting of this class of misdemeanors." *State v. Keyes,* 8 Vt. 57, 67, 30 Am. Dec. 450; *State v. Baller,* 26 W. Va. 90, 53 Am. Rep. 66; 10 Am. & Eng. Ency. of Law (2d ed.) 1041 and authorities in note.

This rule of the common law was announced originally with reference to intimidating or bribing witnesses called or to be called by the state in a criminal prosecution. But it was the public nature of the prosecution and not the nature of the act prosecuted that gave rise to the rule, and the rule has been extended in England to special proceedings relating to the collection of revenue. *State v. Keyes, supra.* The proceeding for revocation of license before a city council is a proceeding in which the public is interested, and the intimidation of witnesses called or to be called in behalf of the public, under the common-law rule above quoted, applied to present conditions, is a misdemeanor. Charging the plaintiff with such conduct does also tend to subject him to public hatred or contempt. What offense was charged against the minors is not stated, but there is a suggestion that no offense was committed by them and that the warrants were issued for an improper purpose.

The order of the circuit court is therefore affirmed in sustaining the demurrer to the first and second counts of the complaint, reversed in overruling the demurrer to the third count of the complaint, and affirmed in overruling the demurrer to the fourth count of the complaint. The plaintiff as appellant has submitted a printed case and brief on his appeal and a brief as respondent on defendant's appeal. The defendant as

appellant has submitted a printed case and brief and a brief as respondent on plaintiff's appeal. The plaintiff should pay the clerk's fees. No other costs to be taxed in this court.

*By the Court.*—It is so ordered.