No appearance for the Territory.

*E. Murphy* for defendant.

---

## TERRITORY OF HAWAII *v.* JOHN T. SCULLY, WILLMOT R. CHILTON AND JOHN H. FISCHER.

RESERVED QUESTIONS FROM CIRCUIT COURT, FIRST CIRCUIT. HON. C. W. ASHFORD, JUDGE.

ARGUED MAY 21, 1915.                    DECIDED JUNE 22, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

INDICTMENT—*demurrer*—*obstructing the course of justice.*

An indictment which charges the defendants in one count with having unlawfully, maliciously and fraudulently combined and mutually undertaken and concerted together to obstruct the course of justice by giving to a witness a sum of money to evade giving his testimony in a civil proceeding before the board of license commissioners on a hearing of an application for a license to sell intoxicating liquors; in another count with having unlawfully, maliciously and fraudulently concerted together and did suppress the evidence of a certain witness in such proceeding; in another count with having wilfully intended to prevent and obstruct the course

of justice, wrongfully, unlawfully and wilfully, evaded, hindered and prevented the said witness from appearing before said board to give his evidence, and did there and then and thereby suppress the evidence of said witness in such proceeding, is good as against a demurrer on the ground of insufficiency, and such demurrer should be overruled.

SAME—*motion to quash—irregularity in making grand jury list.*

A motion to quash an indictment on the ground of irregularities in selecting the list of persons to act as grand jurors should be overruled, as challenges to the panel, and to individual jurors, can only be made by the prosecuting officer, or by some person held to answer a criminal charge, and must be made before the grand jury is sworn.

STATUTES—*construction—penal statute.*

Penal statutes should be construed liberally in favor of the accused and should not be extended in terms by construction; but, the object and purpose of such statutes should not be defeated by refusing to give to the language used its obvious and usual signification.

SAME—*same—words and phrases—civil proceeding.*

In construing a statute which makes it an offense "to obstruct the course of justice * * * in any suit or proceeding, criminal or civil," the word "proceeding" must be considered as having been used in a broad sense, and not in a restricted one; and, so considered, an application pending before a board of license commissioners for renewal of a license to sell intoxicating liquors is a civil proceeding.

SAME—*same—referring to common law for meaning of statute.*

Where a statute punishes an act which was a criminal offense at common law, and the statute defines the act in general terms, resort may be had to the common law to ascertain the meaning of the statute.

OPINION OF THE COURT BY QUARLES, J.

(Watson, J., dissenting in part.)

October 14, 1914, the grand jury of the first judicial circuit returned an indictment against the defendants John T. Scully, Willmot R. Chilton and John H. Fischer containing three counts, the facts set forth in each count alleged to have been committed on the 29th day of June, 1914. The first count accused the said defendants of having "unlawfully, maliciously and fraudulently combined and mutually undertook and con-

certed together to commit an offense against the laws of the Territory of Hawaii, to wit, to suppress legal evidence, * * * then and there, wilfully intending to prevent and obstruct the course of justice, did give to the said John H. Fischer the sum of Twenty Dollars, lawful money of the United States of America, to evade the giving of his testimony before the Board of License Commissioners of the City and County of Honolulu, Territory of Hawaii, in the matter of the application of the Waikiki Inn, Limited, a corporation, for a renewal of its Second Class Liquor License, then and there pending before said Board of License Commissioners, the same being a civil proceeding authorized by law, and the said Board of License Commissioners being then and there a Board duly created and existing by virtue of the laws of the Territory of Hawaii, and authorized and directed to hear the same, and the said John H. Fischer, being then and there a witness competent and necessary to be heard in said proceeding and his testimony necessary and material to the issue there presented in the matter so pending as aforesaid, as said John T. Scully, Willmot R. Chilton and John H. Fischer and each of them then and there well knew, and the said John T. Scully, Willmot R. Chilton and John H. Fischer did then and there and thereby commit the crime of conspiracy in the first degree, contrary to the form of the statute in such case made and provided."

The second count, after setting out the facts aforesaid, charged the said defendants with "unlawfully, maliciously and mutually undertaking and concerting together, suppressed the legal evidence of said John H. Fischer in the civil proceeding aforesaid, and wrongfully and unlawfully prevented the said John H. Fischer from appearing before the said Board of License Commissioners to give legal evidence in the civil proceeding then pending as aforesaid, and did then and there and thereby commit the crime of conspiracy in the first degree, contrary to the form of the statute in such case made and provided."

The third count, after setting forth the facts and circum-

stances alleged in the first count, charged the said defendants, by said acts, with "then and there wilfully intending to prevent and obstruct the course of justice, wrongfully, unlawfully and wilfully, evaded, hindered and prevented the said John H. Fischer from appearing before the said Board of License Commissioners to give his legal evidence in the civil proceeding so pending as aforesaid, and did then and there and thereby suppress the legal evidence of the said John H. Fischer in the civil proceeding of the application of the Waikiki Inn, Limited, a corporation, for the renewal of its Second Class Liquor License then and there pending and to be heard before the Board of License Commissioners of the City and County of Honolulu, Territory of Hawaii, as hereinafter set forth, contrary to the form of the statute in such case made and provided."

To the said indictment the defendant Scully appeared and filed his written motion to quash the said indictment upon the ground that "the grand jury which found said indictment was not drawn from a certified list of names which had been selected in the manner in which it is provided in section 3 of Act 74 of the Laws of the Territory of Hawaii for the Session of 1905, amending section 1777 of the Revised Laws of Hawaii;" that the jury commissioners, in selecting the list of names from which said grand jury were drawn, did so without regard to the number of registered voters last registered in each of the several precincts of the circuit, selecting the names upon said list from the several precincts in the said circuit as follows: from precinct 1 of the fourth district, having a registered vote of 393, eleven names; from precinct 2 of the said district, having a registered vote of 381, seven names; from precinct 3 of said district, having a registered vote of 342, fourteen names; from precinct 4 of said district, having a registered vote of 364, fifteen names; from precinct 5 of said district, having a registered vote of 341, seven names; from precinct 6 of said district, having a registered vote of 450, one name; from precinct 7 of said district, having a registered vote of 320, two names; from pre-

cinct 8 of said district, having a registered vote of 399, one
name; from precinct 9 of said district, having a registered vote
of 467, one name; from precinct 10 of said district, having a
registered vote of 155, four names; from precinct 11 of said
district, having a registered vote of 48, one name; from pre-
cinct 12 of said district, having a registered vote of 339, one
name; from precinct 8 of the fifth district, having a registered
vote of 257, two names; from precinct 10 of said district, hav-
ing a registered vote of 303, one name; from precinct 12 of
said district, having a registered vote of 147, one name; from
precinct 13 of said district, having a registered vote of 335, five
names; from precinct 16 of said district, having a registered
vote of 86, one name. And that no names whatever were placed
on the grand jury list by the jury commissioners in the follow-
ing precincts in said fifth district, having registered votes as.
follows: precinct 1, registered vote 114; precinct 2, registered
vote 113; precinct 3, registered vote 97; precinct 4, registered
vote 138; precinct 5, registered vote 213; precinct 6, registered
vote 133; precinct 7, registered vote 126; precinct 9, registered
vote 508; precinct 11, registered vote 504; precinct 14, reg-
istered vote 497; precinct 15, registered vote 260; precinct 17,.
registered vote 107.

In support of said motion to quash the defendants filed a.
statement of said motion verified by defendant Scully, the affi-
davit of A. S. Humphreys, the affidavit of D. Kalauokalani, Jr.,
clerk of the city and county of Honolulu, verifying the state-
ment showing the registered voters in each of the precincts in the
first judicial circuit and the number of grand jurors drawn
from each, where any were drawn, and a duly certified copy of
the list of grand jurors made by the jury commissioners of the
first judicial circuit on the 1st day of December, 1913, for use
during the year 1914 in the said circuit.

To the said indictment and to each count thereof the defend-
ant Chilton filed his certain demurrer upon a number of grounds
specified, but which may be summarized as follows: 1. The

said indictment and the first, second and third counts thereof, neither severally nor as a whole, state facts sufficient to constitute any crime or offense against the laws of the Territory of Hawaii. 2. That the said indictment and the said counts thereof, nor either of them, do not allege facts constituting a cause of action upon the ground (a) "That the Board of License Commissioners of the City and County of Honolulu is not a court, tribunal, board or commission to which has been delegated by the Territory of Hawaii or the United States of America, power and or authority to administer justice; (b) That the wilful and or intentional prevention and or obstruction of proceeding before the Board of License Commissioners of the City and County of Honolulu is not and does not constitute a wilful and or intentional prevention and or obstruction of the course of justice; (c) That the Board of License Commissioners of the City and County of Honolulu is not authorized by law to hear and or receive testimony and or hear or accept depositions and or other legal evidence; (d) That the application for the renewal of a license and or the hearing upon the application for renewal of a license before the Board of License Commissioners of the City and County of Honolulu is not a suit and or proceeding criminal and or civil."

To the motion to quash the said indictment the city and county attorney entered a demurrer *ore tenus* in open court, and the first judge of the first circuit reserved to this court the question "shall said demurrer be sustained." Said judge also reserved to this court, touching said demurrer to the indictment, the question "whether said demurrer should be sustained for any reason or reasons therein set forth, or whether it should be overruled."

We will first consider the demurrer to the said indictment. The defendant contends that reading sections 4039 and 4041 R. L. 1915 together, that it is apparent that section 4039 was intended to relate to suits and proceedings in a court, while section 4041 was intended to relate to all obstructions of public

legislation and obstruction of the due administration of the law. The last named section reads as follows: "Whoever wilfully obstructs or attempts to obstruct the public legislation, or the due administration of the law, by threats of violence against, or intimidation of, or endeavoring to intimidate, any member of the legislature, or any legislative, judicial, executive or other officer charged with any duty in the administration, enforcement or execution of the law, shall be punished by imprisonment not more than one year, or by fine not exceeding five hundred dollars." A careful reading of both sections shows that the legislature intended to prevent obstructions of public justice by the suppression of evidence by the provisions of section 4039, while by the provisions of section 4041 it intended to prevent the obstruction of public legislation, and the due administration of the law, by the intimidation of public officials. The latter section has no application to the case at bar, and there is nothing in its provisions showing an intent to limit the provisions of section 4039 to the suppression of evidence in suits or proceedings pending in a court or judicial tribunal strictly. Section 4039, which has been in force for many years past, is as follows: "Whoever, wilfully intending to prevent or obstruct the course of justice, shall give any gratuity or reward, or make any promise thereof, express or implied, that any one shall evade giving his testimony, or shall destroy, conceal or suppress any deposition or other legal evidence in any suit or proceeding, criminal or civil, shall be punished by imprisonment at hard labor not more than one year, or by fine not exceeding five hundred dollars."

Section 4076 R. L. 1915, which has been in force for many years, provides as follows: "A conspiracy is a malicious or fraudulent combination or mutual undertaking or concerting together of two or more, to commit any offense or instigate any one thereto, or charge any one therewith." And said section, in enumerating specific acts that under the statute constitute conspiracy, mentions the following: "A confederacy to commit

murder * * * or any other offense provided for in the criminal code."

The principal question involved in the decision of the reserved question, touching the demurrer to the indictment, is, whether under the statute (Sec. 4039 R. L. 1915) an application before the board of license commissioners for the renewal of a liquor license is a civil proceeding. If this question be answered in the affirmative, it necessarily follows that the acts charged in the indictment are a violation of the statute, in that a witness was promised and given a reward to evade giving his testimony in a civil proceeding, thereby obstructing the course of public justice.

We are not unmindful of the rule recognized in this jurisdiction, as in others, that penal statutes are to be liberally construed in favor of the accused; that statutes creating and defining crimes cannot be extended by intendment; and, no act can be punished as a crime unless clearly within the terms of a statute forbidding it and prescribing a punishment therefor. *Territory* v. *Ah Goon,* ante 31, 33. On the other hand, the object, purpose and intent of a penal statute should not be defeated by technicalities, or by refusing to give to the language its obvious and usual signification. Legally, the acts charged in the indictment are either innocent or criminal. The suppression of evidence for the purpose of working a fraud upon the public, or upon the people of a certain vicinity, as well as upon an administrative board charged with and exercising quasi judicial powers, tends to pervert the course of public justice and palpably comes within the spirit of the statute under consideration. Does it come within the letter of the statute? This court has held that a board of license commissioners is not a court. *Territory* v. *Miguel,* 18 Haw. 402. Nevertheless, the board is charged with the duty of hearing applications; with the power to grant or refuse a license to sell intoxicating liquors, or a renewal of such license; is authorized to hear remonstrances to such applications, and is prohibited from granting a license to

any one who has been convicted of a felony under the laws of the Territory, or to any one who is under majority, or to any one who has had a license and the same has been revoked for cause under the statute authorizing revocation. The board is also prohibited by law from issuing a license for the sale of intoxicating liquors in any building or premises within 150 feet of any church, chapel or school. An application for a license or renewal of a license comes before the board for hearing and determination. The board is authorized by section 2123 R. L. 1915, to hear the protest of any registered voter of the precinct within which the business is to be conducted under the license, or the protest of any one owning real estate within 1000 feet of the premises, or the protest of any person or persons on behalf or in the interest of any church, chapel or school situated within the distance restricted by statute in favor of such institutions. Section 2104 R. L. 1915, authorizes every member of the board of license commissioners to administer oaths in all matters pertinent to the business of the board. It is true that under the statute governing the board of license commissioners they have a very broad discretion in regard to granting or refusing licenses and it may be said that there is no positive duty enjoined upon them in any case to grant a license; and, that their action in passing upon an application for license, or a renewal of the license, is final. Under such circumstances, is the hearing before the board of license commissioners, provided for by the statutes relating thereto, a proceeding within the meaning of the statute under consideration? It is not a criminal proceeding, and if a proceeding at all it must be a civil proceeding. The phrase "in a suit or proceeding, criminal or civil," must be considered as having been used, not in a technical or limited sense, but, in a broad and general sense, giving to each of the words its ordinary and general signification. The word "court" is used in similar phrases in many statutes, and if the word had been used here so as to make the phrase read "in any suit or proceeding in a court" the statute would not apply to a pro-

·ceeding before the board of license commissioners. In *Maloney* v. *Douglas Co.,* 89 N. W. 249, the supreme court of Nebraska held that presenting a claim against the county before the county board was a proceeding, saying: "The phrase 'action or pro- ·ceeding' in which the lien is given is certainly broad enough to include the prosecution of a claim before a county board." In *Raymond* v. *Cleveland,* 42 Ohio St. 522, the term "proceeding" was held to be broad enough to include a special assessment for ·street purposes and not confined in its meaning to an action, or :steps in an action, in a court. It has been repeatedly held in Indiana that an application to a board of county commissioners ·for a license to sell intoxicating liquors is a judicial proceed- ·ing; that the petitioner has the burden of proving that he is of ·sober habits and is otherwise under the law a fit person to be ·entrusted with a license to sell intoxicating liquors. *Halloran* v. *McCullough,* 68 Ind. 179; *List* v. *Padgett,* 96 Ind. 126; *Castle* v. *Bell,* 145 Ind. 8; *Scanlon* v. *Deuel,* 176 Ind. 208. It has ·been held in Missouri that the incorporation of a drainage dis- ·trict, and the application of a person for a license to sell liquor, :as a dram shop keeper, are proceedings or suits within the meaning of a statute giving the right to a change of venue under ·certain circumstances "in any civil suit." *State ex rel.* v. *Riley,* 203 Mo. 175; *State ex rel.* v. *Denton,* 128 Mo. App. 304, 312. In *Tuohy* v. *Halsell,* 35 Okl. 61, it was held that a hearing be- ·fore a committee of the senate to determine the fitness of an :appointee, whose confirmation was pending before the senate, ·was "a proceeding authorized by law and in and to a body ·clothed with quasi judicial powers, sitting in execution of a ·public duty." *In re Tillery,* 43 Kans. 188, in construing a stat- utory provision that the repeal of a statute does not affect any ·proceeding commenced under or by virtue of the statute re- ·pealed, the court, at page 192, said: "It would seem that the word 'proceeding' as used in the statute * * * is broad enough ·to include any proceeding of a judicial or official character. It would seem that it should include the proceedings of any

court, or any official board, or any officer, and there is some
room for a claim that it might include still other proceedings."
In *U. S.* v. *New Departure Co.*, 195 Fed. 778, it is held that a
hearing before a grand jury is a proceeding within the meaning
and intent of the phrase "any suit or proceeding" as used in the
federal judicial code, the word "proceeding" to be understood in
its ordinary signification. In *Ruhland* v. *Cole*, 143 Wis. 367,
376, it is said: "The proceeding for revocation of a license
before a city council is a proceeding in which the public is inter-
ested, and the intimidation of witnesses called or to be called in
behalf of the public, under the common law rule above quoted,
applied to present conditions, is a misdemeanor." The rule
referred to in said quotation was stated by the Wisconsin court
as follows: " 'The doing of any act tending to obstruct the due
course of public justice has always been held indictable as a
misdemeanor at common law. Bribing, intimidating, or per-
suading a witness not to testify, or not to attend court, are each
among the readiest and the most corrupting of this class of mis-
demeanors.' *State* v. *Keyes*, 8 Vt. 57, 67, 30 Am. Dec. 450;
*State* v. *Baller*, 26 W. Va. 90, 53 Am. Rep. 66; 10 Am. & Eng.
Ency. of Law (2d ed.) 1041 and authorities in note. This rule
of the common law was announced originally with reference to
intimidating or bribing witnesses called or to be called by the
state in a criminal prosecution. But it was the public nature of
the prosecution and not the nature of the act prosecuted that
gave rise to the rule, and the rule has been extended in England
to special proceedings relating to the collection of revenue. *State*
v. *Keyes*, supra." (*Ruhland* v. *Cole*, supra.)

We hold that the legislature used the word "proceeding" in
its broad sense and not in a limited or technical sense. The
hearing of an application for a liquor license by the board of
license commissioners is a proceeding of a quasi judicial nature
in which the public is interested; in which the applicant for a
license is interested; in which any person authorized by law to
file a protest is interested. The hearing is a public hearing;

issues of fact are presented to be determined by the board upon evidence introduced. It would be an obstruction of the course of public justice to allow either side to such a controversy before the board of license commissioners to intimidate or bribe witnesses from appearing, and the suppression of legitimate evidence by any party interested in such controversy would be detrimental to the public good, to the best interest of society, and a culpable obstruction of the course of public justice. At common law it has always been an offense to pervert or obstruct public justice or to conspire for such purpose. *State* v. *DeWitt,* 2 Hill (S. C.) 282, 27 Am. Dec. 371. "All conspiracies which have for their object the perversion or obstruction of public justice have been, from the earliest times, regarded as indictable. Accordingly, it has been held to be an indictable conspiracy when the design of the confederates was to be accomplished by the suppression or fabrication of evidence." 6 Am. & Eng. Ency. L. (2 ed.) 856, 857. See also *State* v. *Carpenter,* 20 Vt. 9. While we have no common law offenses in this jurisdiction, yet the rule is well established that when a statute punishes some act which was a crime at common law, and the statute defines the act in general terms, resort may be had to the common law to ascertain the meaning of the statute. *State* v. *Berdetta,* 73 Ind. 185; *State* v. *Bertheol,* 6 Blackf. 474; *Conner* v. *Commonwealth,* 13 Bush 714; *Benson* v. *State,* 5 Minn. 6; *State* v. *Davis,* 22 La. Ann. 77; *Prindle* v. *State,* 31 Tex. Cr. 551; *Commonwealth* v. *Chapman,* 13 Metc. (Mass.) 68; *State* v. *Camley,* 67 Vt. 322; *In re Greene* 52 Fed. 104, 111; *State* v. *Noble,* 118 Ind. 350. In the case of *The King* v. *Angee,* 8 Haw. 259, the court, at page 260, said: "The defendants' argument, that because we have no common law offenses we are therefore precluded from the use in our practice of any common law definitions which go to make up the description of a criminal offense, is untenable. Many words are necessarily used in defining crimes which are of a technical character, with meanings derived sometimes from usage, sometimes from the common law,

and sometimes from judicial decisions. The contention that we must go to our statutes for the definitions of all words which themselves are used in defining crimes is simply impracticable." Judge Cooley, in his work on constitutional limitations (7 ed.), at page 94, says: "It is also a very reasonable rule that a State constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. By this we do not mean that the common law is to control the constitution, or that the latter is to be warped and perverted in its meaning in order that no inroads, or as few as possible, may be made in the system of common-law rules, but only that for its definitions we are to draw from that great fountain, and that in judging what it means, we are to keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes." The word "justice" has been defined as follows: "The constant and perpetual disposition to render every man his due." Justinian Inst. b. 1, Tit. 1; Coke, 2nd Inst. 56. "The conformity of our actions and our will to the law." Toullier, Droit Civ. Fr. Tit. Prel. n. 5. It is again defined as "The dictate of right according to the common consent of mankind generally or of the portion associated in one government or governed by the same principles and morals." Anderson's Law Dict. And again: "In a judicial sense, * * * exacting conformity to some obligatory law." See decision in Borden v. State, 11 Ark. 519, where the court, at page 528, quotes from Burlamqui. Can it be doubted that in a public hearing, before a board, in a matter of public concern which affects public and private interests—where the question of applying and administering the public laws is involved—where issues of fact are made by application of an interested party on the one hand, and protests by public officers or private parties interested on the other—where evidence is admissible, and each member of the

public board is clothed by law with the power to administer oaths to witnesses, that the prevention of the attendance of a witness by either of the means mentioned in the statute is an obstruction of the course of public justice in a civil proceeding? As shown by the authorities heretofore cited the important feature in the offense of obstructing the course of public justice at common law was the public nature of the proceeding, and not the nature of the subject matter of the proceeding. It is not necessary to the offense that the witness should have been subpoenaed. *State* v. *Horner* (Del.); 26 Atl. 73; *State* v. *Bringgold,* 40 Wash. 12; *Commonwealth* v. *Berry* (Ky.) 133 S. W. 212; *State* v. *Sills* (Kans.) 118 Pac. 867. In *Commonwealth* v. *Berry,* supra, the court said: "The course of public justice must not be impeded. The gist of the offense is not a contempt of the court, or an abuse of its process, but the obstruction of justice. * * * The law does not tolerate that its proceedings shall be stifled, and the running off of a witness to stifle a prosecution is none-the-less an offense because it is done before the grand jury is impaneled."

We hold under the statute in question that the acts set forth in the indictment are sufficient to state an offense in that the acts charged show that the defendants, concerting together, mutually undertook to promise, and to give a gratuity or reward to a witness to evade giving his testimony in a civil proceeding.

As to the motion to quash the indictment we find no showing in the record of any claim that the grand jurors, or any of them, who found and returned the indictment, were disqualified or incompetent to act as such jurors. The motion is based upon an obvious irregularity in disregarding the plain provisions of the statute (Sec. 2412 R. L. 1915) in failing to make the list from which the grand jurors are to be drawn as directed by the statute, and did not "proceed to select and list from the citizens, voters and residents of the several precincts in the circuit, as near as may be according to and in proportion with the respective number of registered voters last registered in each of such

precincts" the list of grand jurors. Section 2422 R. L. 1915, provides: "Before the grand jury is sworn, the prosecuting officer, or any person held to answer a charge for a criminal offense may challenge the panel, or an individual juror, for cause to be assigned to the court." This statute was enacted in 1903, and its provisions were in force prior thereto by rule adopted by this court. In *Territory* v. *Ferris*, 15 Haw. 139, it was held that this right to challenge the panel or individual jurors must be exercised before the jury is sworn, and if no challenge to the panel or individual jurors is made before they are sworn, the right to challenge is waived. In that case Ferris was in jail, held to answer any indictment that might be found against him, and was not brought into court, and did not demand the right to be present in court when the grand jury was impaneled, and this court said that it was his duty to know when the court met, and to give notice or demand the right to be present in order to exercise his right of challenge, failing which, he waived the right. As to the defendant, he does not belong to any class of persons who are authorized by the statute to challenge the panel. The terms of the statute, the reasoning in the *Ferris* case, and in the decisions cited in the *Ferris* case, impel us to hold that the motion to quash the indictment upon the grounds stated, was made too late, and cannot be properly made after an indictment has been returned on the mere ground of irregularity. The reasoning in the case of *Territory* v. *Chung Nung*, 21 Haw. 66, is in harmony with these views.

We answer the reserved questions as follows: The demurrer to the indictment should be overruled. The demurrer to the motion to quash should be sustained, and the motion to quash overruled.

*J. W. Cathcart, City and County Attorney* (*W. B. Lymer, Deputy City and County Attorney*, on the brief) for the Territory.

*R. J. O'Brien* (*E. C. Peters* with him on the brief) for defendant Willmot R. Chilton.

Territory v. Scully, 22 Haw. 618.

OPINION OF WATSON, J., CONCURRING IN PART AND
DISSENTING IN PART.

I concur in the conclusion arrived at by the majority that
the motion to quash should be overruled, but I respectfully dis-
sent from the views expressed in the foregoing opinion touching
the disposition of the demurrer to the indictment and the con-
clusion arrived at in that behalf. I am unable to agree that
an application for the renewal of a liquor license before the
board of license commissioners is a civil "proceeding" within
the meaning of section 4039 of the Revised Laws of 1915, which
section the defendants are charged with having violated and
conspired to violate. To constitute an offense under the section
referred to which is set out in full in the foregoing opinion, it
is necessary that there be a wilful intent to "prevent or obstruct
the course of justice" in a "suit or proceeding, criminal or
civil."

That the application for the issuance of a liquor license be-
fore the board of license commissioners is not a suit is obvious,
the word "suit" being defined by Anderson as follows: "Any
proceeding in a court in which a plaintiff pursues his remedy to
recover a right or claim;" and by Bouvier: "Suit is a generic
term of comprehensive signification and applies to any proceed-
ing in a court of justice in which the plaintiff pursues in such
court the remedy which the law affords him for the redress of
an injury and the recovery of a right." That the application
for the renewal of a license is not a criminal proceeding is rec-
ognized by the opinion of the court.

The question as to whether or not an application before a
board of license commissioners is a civil proceeding within the
meaning of our statute depends upon the meaning of the word
"proceeding." In the foregoing opinion a number of cases are
cited (none of which, it may be observed, involve the construc-
tion of a penal statute) from which the majority deduce that
the word "proceeding," as used in our statute, is broad enough
to cover the case made by the indictment. In *Hopewell* v. *State,*

22 Ind. App. 489, 495, a case where a police officer was indicted for failing to arrest and disperse a riotous mob, and it was argued by the State that the indictment was based upon a statute which made it a criminal offense for "the county clerk, sheriff, constable, coroner or other ministerial officer" to neglect or refuse to perform any duty he is required by law to perform in any criminal case or *proceeding,* the court, after citing a number of cases in which the word "proceeding" has been judicially defined, says: "In the above cases it will be seen that the term 'proceedings' is used with reference to something done or to be done in a court of justice. Not only do we believe this to be the proper interpretation and meaning of the term, but from the wording of the statute itself we can but conclude that it was intended by the legislature to be given this meaning." In *Nelson* v. *Dunn,* a late case decided by the appellate court of Indiana, and reported in 104 N. E. 45, the court, on page 46, says: "It is to judicial acts before some judicial tribunal that the term 'proceeding' may be properly applied in a legal sense." In *Gordon* v. *State ex rel.,* 4 Kan. 421, 432, it is said: "The term 'proceeding' is a technical one, and has acquired a peculiar and appropriate meaning in law. In its general sense, in law parlance, it means all the steps or measures adopted in the prosecution or defense of an action." See also 23 Am. & Eng. Enc. L. 2 ed. 155.

I am clearly of the opinion that the word "proceeding," as used in our statute, was intended by the legislature to have reference to something done or to be done in a court of justice. (That a board of liquor commissioners is not a court was decided by this court in *Territory* v. *Miguel,* 18 Haw. 402, cited in the foregoing opinion.) This view is strengthened by a consideration of the wording of the statute itself which makes the intent (to prevent or obstruct the course of justice) an essential element of the offense created. In 29 Cyc. 1326, it is said: "The phrase 'obstructing justice' means impeding or obstructing those who seek justice in a court or those who have duties or powers

Territory v. Scully, 22 Haw. 618.

of administering justice therein." One of the definitions given by Bouvier of the word "justice" is: "According to the Frederician code, part 1, book 1, title 2, Sec. 27, justice consists simply in letting every one enjoy the rights which he has acquired in virtue of the laws, and as this definition includes all the other rules of right there is properly but one single general rule of right, namely, give every one his own." One of the several definitions given by Anderson, for which he cites *Borden* v. *State,* 11 Ark. 528, is: "In a judicial sense, exact conformity to some obligatory law. The doing of justice is then, the performance toward another of whatever is due him in virtue of a perfect and rigorous right, the execution of which he may demand by forcible means."

From these definitions it will be seen that the word "justice" implies a right which may be enforced by the party claiming it. Certainly under the laws of this Territory there is no right to the issuance or renewal of a liquor license. At best such issuance is a privilege which cannot be legally demanded or enforced. Conceding that the word "proceeding," as used in the statute, is broader than the term "suit," which immediately precedes it, applying the rule of *ejusdem generis,* I think it is clear that the latter word must be limited in its meaning by the former and construed to mean only such proceedings as are pending in a court of justice. (17 Am. & Eng. Enc. L. (2 ed.) 6; 26 Am. & Eng. Enc. L. (2 ed.) 609.) The words "course of justice" and "due administration of justice," and the like, are, in their ordinary and every-day use, intended and understood to apply to proceedings in courts of justice. This is shown by the very definition of the word "court," which is given by Anderson as "the place where justice is administered," and by Bouvier as "a body in the government to which the administration of justice is delegated." In the case of *Todd* v. *United States,* 158 U. S. 278, in which it was held that a preliminary examination before a commissioner of a circuit court is not a case pending in any court of the United States within the meaning

of Rev. Stat. 5406 (relating to the obstructing of justice), the court, in an opinion delivered by Mr. Justice Brewer, said (p. 282):

"It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. 'There can be no constructive offenses, and before a man can be punished, his case must be plainly and unmistakably within the statute.' *United States* v. *Lacher,* 134 U. S. 624; Endlich on the Interpretation of Statutes, sec. 329, 2d. ed.; Pomeroy's Sedgwick on Statutory and Constitutional Construction, 280." See also *Territory* v. *Ah Goon,* 22 Haw. 31, 32.

For the reasons herein stated I am of the opinion that the indictment charges no offense against the laws of the Territory and that the demurrer thereto, and to every count thereof, should be sustained.