FRANKLIN,<br>January,<br>1836.<br><br>Steam-boat Co.<br>vs.<br>Wilkins.

---

### STATE vs. MAZELDA KEYES.

FRANKLIN,<br>January,<br>1836.

The seventh article of amendment to the United States Constitution, which provides, that in the trial of capital and other infamous offences, the accused shall be entitled to trial upon indictment, has reference to offences cognizable only before the United States courts.

The persuading a witness not to attend a public prosecution on the part of the state, although not infamous, is an indictable offence, even where such witness had not been regularly served with a subpœna, but was known to be a material witness and to be relied upon by the public prosecutor.

The *attempt* to commit such offence, evidenced by distinct and unequivocal *acts*, is indictable, whether it succeed or not.

So the soliciting any one to commit such offence is, it seems, itself indictable.

There were two informations against the same respondent, charging nearly the same offence, filed in the court below by the states attorney of this county. The first count in the first information, charges in substance, that the grand jury had prefered a bill of indictment against one Joshua H. Howe, which was pending and tried at the time of filing the information, and that John Keezer was a material witness on the part of the state and about to be summoned to attend the trial as a witness, and that the respondent knowing these facts and that Howe was about to be arrested and

8

FRANKLIN,
January,
1836.

State
vs.
Keyes.

held for trial, "did endeavor to persuade and induce the said John Keezer to abscond and refrain from appearing before the court aforesaid at any time during the term, to testify the truth and give evidence before the said court on the trial aforesaid, with intent to obstruct and impede the due course of justice."

The second count charges, that said Howe had been by a justice of peace, on due process, recognized for his appearance at the county court in this county, for trial on a charge of felony ; that Keezer was a material witness on the examination before the justice, and had there been improved by the state and recognized by the justice, for his appearance before the county court aforesaid, to testify in the case ; that these recognizances were taken and made returnable and returned to the April term of the court, 1834 ; that at the September term, 1834, the grand jury presented a bill against Howe for the offence for which he had become recognized, and that that bill of indictment was pending in court at the April term, 1835, and that Keezer was a material witness on the trial : that his recognizance was in full force, and Howe about to be tried and afterwards tried ; that these facts being well known to Keyes, he "endeavored to disuade, hinder and prevent the said Keezer from attending court," &c., as set forth in the other count.

The second information alleges that Howe was in custody and about to be put upon his trial in the county court for felony, on an indictment duly presented by the grand jury ; that Royce K. Beeman was a material witness, and that the state had caused a subpœna in due form to be issued, requiring his attendance on a certain day named in the writ, before the court to testify on the trial of the indictment; that Keyes knowing the premises did "endeaver to disuade, hinder and prevent," &c., as in the other information, he also knowing that this subpœna was then about to be served upon the witness Beaman. The second count does not materially vary the case.

The respondent first moved, before pleading to these informations, that they be quashed and dismissed for want of any authority in the state's attorney to file them. This motion being overruled, he went to trial on the general issue, and after verdict of guilty, moved the court to arrest judgment for the insufficiency of the information. This motion also was overruled and exceptions were allowed, and both questions came here for revision.

*Henry Adams, state's attorney.*—There is no uncertainty in the information as to the time when and where the offence was

committed, or in the description of the person or of the offence itself. But the respondent insists that there is no crime charged in the information.

FRANKLIN,
..January,
1836.

State
vs.
Keyes.

By the common law all offences below the degree of felony, are denominated misdemeanors, and were, in general, punished by fine and imprisonment, and might be prosecuted by information filed, *ex officio*, by the attorney general.

To endeavor to dissuade a witness from giving evidence, or to advise a prisoner to escape or stand mute, are all impediments to the due course of justice, and are by the common law considered as high misdemeanors. The mere attempt to stifle evidence is a crime, though the attempt should not succeed.—4 B. C. 126—2 Chitty C. L. 116, 236—6 East. 466—2 Strange 904.

The second count charges the respondent with attempting to prevent the service of the subpœna of the court upon the witness Beeman, by persuading him to leave the state. If Beeman, knowing of the issuing of the subpœna, had left the state to prevent the service, he would have been guilty of a misdemeanor, as any obtruction to the execution of lawful process, is a crime.—4 B. C. 129.

The witness, Keezer, was bound by his recognizance to appear at court, and if he had neglected to appear, he would have been guilty of a contempt. And the attempt to commit a crime or to solicit another to commit a crime, is criminal.

But it is said, that by the constitution of the United States, all infamous crimes must be prosecuted by indictment, and that the crime charged against the respondent, is included in that class of offences denominated *crimen falsi*.

Article 7th of amendment to the constitution, relates to offences against the laws of the United States and not to crimes against the laws of the several states. Without this article of amendment, all offences, even treason, might be prosecuted by information, as congress had the power, before the amendment, to prescribe the manner of prosecuting offences against the laws of the Union. This article was evidently intended as an amendment to the third article of the constitution, as first adopted.—See sec. 2 and 3 of that article. And the 8th article of amendment points out the district from whence the jury shall be taken and in which the offender shall be tried, which was omitted in the original constitution. But the states must possess the power of prescribing the form and mode of prosecuting offences against their own laws, unless this power is expressly prohibited to the states by the constitution of

FRANKLIN,
January,
1836.

State
vs.
Keyes.

the United States, which is not pretended.—See 12th article of amendment. And it is believed that the states have always exercised this power since the revolution.

But it is denied that attempting to dissuade a witness from giving evidence, is an infamous crime.

By the common law, infamous persons were not allowed to testify, and the reasons assigned were, that infamous persons were not permitted to serve as jurors, and therefore were not allowed to give evidence to inform that jury with whom they were too scandalous to associate. And such crimes and such only as disqualified a person from acting as a juror, were deemed infamous by the common law; these were treason, felony, perjury, conspiracy, præmunire, forgery, being attainted of false verdict and proving recreant in the trial by battle.—3 B. C. 363, 369, 370.

Formerly the infamy of the punishment and not the nature of the crime, was the test of competency.

But it is said that recently the English courts have become more enlightened and have adopted better rules upon this subject, and that now all crimes are deemed infamous which the court shall happen to decide to be inconsistent with the common principles of honesty or humanity. This rule is as uncertain as the views and feelings of mankind concerning the principles of honesty are various and changeable, and there is nothing about which mankind have differed more widely in all ages. One court might determine that profane swearing or Sabbath breaking is inconsistent with the principles of common honesty; another that a petty assault was inconsistent with the common principles of humanity.

This doctrine may be consistent with the principles of the English oligarchy, but its adoption here will produce much inconvenience and difficulty. The infamy or disability should always be a part of the punishment for certain crimes, and considered in this light, it would seem to belong to the legislature to decide what crimes should be considered infamous.

*Smith and Beardsley for respondent.*—1. We insist that the state's attorney has no power, *ex officio*, to file an information for the offence charged in the present case, and that the respondent cannot be held to trial thereon.

The statute, page 557, in enumerating the duties of a state's attorney, declares that for all matters or causes cognizable by the supreme or county court, the state's attorney shall have power "to file information, *ex officio*, in said court in matters therefor."

FRANKLIN,
January,
1836.

State
vs.
Keyes.

We concede that, by the common law, this power existed, and that if we have adopted that part of the common law which gives this power, it may with propriety be exercised here.

By the act passed in 1797, Comp. stat. 57, it is enacted, "that so much of the common law of England as is applicable to the local situation and circumstances, and is not repugnant to the constitution or to any act of the legislature, &c., be and hereby is adopted law in this state."

Now if this common law power is repugnant to the constitution of this state or the United States, it has never been adopted here and no such power now exists.

By the 7th article of the constitution of the United States it is declared, "that no person shall be held to answer for a capital or otherwise infamous offence, unless on a presentment or indictment of a grand jury."

By the 6th article of the same constitution, it is declared that this constitution and the laws of the United States, which shall be made in pursuance thereof, &c., shall be the supreme law of the land, and the judges, in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

Whether this common law power now claimed to exist in this state, is repugnant to the constitution of the United States, depends solely upon the question, whether the offence charged in the indictment is of an infamous character, and whether legal infamy would attach upon a conviction.

If so, it is the very case for which the constitution has declared that no person shall be held to answer, "unless on a presentment or indictment of a grand jury."

This then leads to the only remaining consideration, namely, whether the offence charged be of such a character as would, upon conviction, render the respondent legally infamous. [The counsel here cited 2 Stark. Ev. 715—1 Chit. Crim. Law 489—3 Stark. R. 21—Phil. Ev. 22.

In order to render a person infamous on conviction for an offence it is not necessary that he should be subjected to an infamous and disgraceful punishment.

It is not the punishment but the nature of the offence which works the infamy.—Willis' R. 665—Phil. 20, 23—2 Stark. 714.

We apprehend, in all convictions in this state for crimes or misdemeanors punishable by imprisonment in the state prison, no doubt can exist that on conviction, infamy attaches.

FRANKLIN,
January,
1836.

State
vs.
Keyes.

Now if it is the nature of the offence and not the punishment which induces infamy, it would seem to result, that those misdemeanors or crimes against society not provided for by statute but involving equal moral turpitude with those which are provided for, by statute, and are made punishable by imprisonment, should be regarded as equally infamous.—1 Blac. R. 401—1Leach 442—2 Chit. crim law 910.

2. It is insisted that the informations are insufficient. 1. Because they do not recite the writ of subpœna. This is always done as appears by all the forms and is necessary, that the court may know whether they are such as would bind the witness to attend and give evidence.—3 Chit. Crim. Law 116—2 Swifts Dig. 724. 2. It does not appear that either Beeman or Keeser were served with any subpœna, or that they were under any obligation, in obedience to any process of the court, to attend as witnesses, nor that they had any notice that the government wanted them as witnesses or intended to summon them. How then could the due course of justice be obstructed by any thing which the respondent could do.

3. Again, the ground work of the information is, that the defendant knew that the witness was about to be served with a subpœna, and the very gist of the offence is made to depend upon this knowledge.

Now how can it be said that the respondent knew that the witnesses were about to be summoned. It is utterly impossible that he should know any such thing. The averment of the fact of knowledge is, therefore, ridiculous and absurd, wholly destitute of substantial meaning.

4. The informations do not allege that the respondent succeeded in his attempt upon the witnesses.

In *Commonwealth* vs. *Bangs*, 9 Mass. Rep. 387, it was held that an indictment for administering a potion with intent to procure an abortion, must contain an allegation that an abortion ensued.

The opinion of the court was delivered by

REDFIELD, J.—The first question, in this case, arises upon the decision of the county court in overruling the motion to quash. That motion was made upon the ground, as we infer from the argument here, that this respondent being charged with an infamous crime, was entitled to insist upon a trial upon *indictment*. In support of this position the counsel rely mainly upon the seventh of the articles proposed and adopted in amendment of the constitu-

tion of the United States, which is in these words : "No person shall be held to answer for a capital or otherwise *infamous* crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger."

As these amendments were professedly proposed and adopted with the expectation that they would define, limit and explain the provisions of the constitution, as originally reported by the convention, it is but reasonable that the amendments should be construed with a reference to the constitution. There can be no doubt this 7th article of amendment was adopted with reference to the 3d article and 2d section of the constitution. This section provides for a national judiciary, but no where requires that one accused of crime shall be entitled to require a bill of indictment to be found by a grand jury, before submitting to trial for the alleged offence. The only limitation, as to the mode of trial, found in the constitution, is, that the accused shall be entitled to trial by jury, (traverse jury of course) and that the trial shall be had within the state where the offence was committed, if committed within the limits of any state, and if not, then at such place as congress may by law have directed.

This 7th article of amendment provides, that in all capital or otherwise infamous crimes, the accused shall be entitled to the further safe guard of liberty or life or character, afforded by a grand jury. The 8th article of these amendments states further limits, and restricts the mode of trial for crimes, by providing that the trial shall always be by a jury of the district where the offence is committed, which district shall have been previously defined by law. It could not well be doubted, that the provisions in the constitution, as first reported and the amendments, all have reference solely to trials in the courts of the United States. The phraseology clearly indicates this. In the first provision, trial by impeachment is excepted from the cases required to be tried by jury. This most clearly points to those trials which the constitution provides shall be had before the senate, on the motion and information of the house of representatives. In the article of amendment alluded to and which is relied upon in this case, offences committed in the land and naval service are excepted. The phraseology adopted in both cases, clearly indicates, that the provision has reference only to proceedings in the tribunals of the United States. The same reasoning and conclusion has been adopted by this court in reference to that article of amendment of

FRANKLIN,
January,
1836.

State
vs.
Keyes.

Franklin,
January,
1836.

State
vs
Keyes.

the United States constitution which provides for trial by jury in civil actions—*Huntington* vs. *Spooner's trustee*, 5 Vt. Rep. 189. And we see no good reason why the same decision should not be now adhered to. The language of the 12th article of amendment thoroughly fortifies this construction. It provides that powers not delegated to the United States shall belong to and be exercised by the states. And although it be true that some of the provisions of the constitution of the United States are intended to be applied as well to the states as to the United States, such is not the fact in regard to its principal provisions. And we cannot presume that, but the contrary, to be the case, when the language of the instrument is general or equivocal.

It might be added as a further reason why we should not be inclined to adopt the view presented by respondent's counsel, and consider this article of the United States constitution as extending to trials in the state courts, that the contemporaneous construction and subsequent practice has, in reference to this subject, been wholly at variance with any such determination. Petty larceny, which is now very generally admitted to be an infamous offence, is in all our cities tried before the police courts, where it is well known no grand jury attend. The same is true of trials for petit larceny in this state and many of the other states, before single magistrates. And it has never been doubted that these convictions, upon information, were regular and valid. This consideration alone is entitled to great weight, as has been repeatedly held, both by the state and United States courts.

But even if we could adopt this view of the case, we are not prepared to say that the offence attempted to be charged in this information, is in it character infamous. The old notion that infamy depended upon the nature of the punishment, is long since abandoned. But we get nothing in its stead, which is, on the whole, much more satisfactory. We find the books filled with general definitions in abstract terms, which no man can pretend clearly to comprehend. Treason and felony, as at common law, are terms sufficiently intelligible, but the term *crimen falsi* is one of most indefinite extension, and when Russell extends it to every *falsehood*, which affects the public administration of justice, it is certainly leaving so important a consequence to depend upon a very loose and unsatisfactory condition. Legal infamy, as a part of the punishment of crime, is by far the severest portion of the punishment, in most cases of conviction of an infamous offence. It is important then, that the number of infamous crimes, which

FRANKLIN,
January,
1836.

State
vs.
Keyes.

on conviction shall induce legal infamy, should not be multiplied by *construction*. Those which are held to be infamous, as treason, felony, forgery, and perjury and bribery, should be clearly defined and well known. Some of the English decisions of late seem to have gone great lengths. The case of *Bushell* vs. *Barrett*, 21 Com. Law Rep. 483, expressly decides, that inducing one to absent himself from attending as a witness, in a question depending before justices in relation to offences against the revenue laws, was an infamous offence. This is put upon the ground of its being an offence tending to hinder the due course of public justice. An attempt even to induce a witness by threats or promises or any other means to disregard his obligation to attend as a witness upon the trial of a public prosecution, when the security of the public quiet and the purity of the fountains of public justice may be hazarded, is undoubtedly a high-handed offence, and as such should be severely punished. But when it is recollected, that in the heat of zeal to save a friend, whom they may believe to be more innocent than the testimony would seem to admit, men will sometimes be induced to go great lengths, and sometimes without much consideration, it is not perhaps best, that every *attempt* to induce a witness, under such circumstances, to avoid being compelled to attend even a public trial for felony, should be declared infamous. The decisions here have never as yet gone so far, and we should certainly hesitate in following the recent English authorities.

Upon both grounds then, we think the motion to quash should have been overruled.

But the respondent further moved the court in arrest of judgment for the insufficiency of the information. It is said, there having been no subpœna served upon the person, he cannot be considered in the light of a witness. But it will be difficult to say, just when the person will become so far a witness that it will be an offence to hinder him from giving his attendance upon the court. The essence of the offence is obstructing the due course of justice. This has always been held indictable, as a misdemeanor, at common law. Whether the witness had been served with a subpœna or not, cannot be esteemed very material. The effect of the act and intent of the offender is the same, whether the witness has been or is about to be served with a subpœna, or is about to attend in obedience to a voluntary promise. Any attempt, in either case, to hinder his attendance, is equally criminal and equally merits punishment. But in the case of the second count,

9.

FRANKLIN,
January,
1836.

State
vs.
Keyes.

this question does not properly arise. It is there alleged that the witness had been recognized for his appearance at a former term as a witness in this case. It has been decided by the court, that such a recognizance, though not so expressed, imposes upon the connusee, whether respondent or witness, the obligation to attend from term to term, until the case is determined. It is said at bar, that the bonds of Howe had been estreated, and thus Keezer exhonorated from the obligation of his recognizance. This question cannot arise on a motion in arrest, or if it could, the indictment being good, the motion in arrest cannot prevail. For in criminal proceedings on motion in arrest, if one count in the bill or information be good, it is sufficient, although the contrary rule prevails in civil suits. And in any view of the case, the offence was complete. The witness having once been improved before the justice and recognized for his appearance to testify on the final trial, cannot be presumed to be in doubt, whether his testimony would be required on the final trial. Knowing this, it would be equally criminal in him corruptly to absent himself from the state or keep secreted, or in any other way avoid being summoned as a witness, whether his recognizance was or was not still in force. The question here is not whether the witness has been guilty of a contempt in disobeying the process of the court, but whether there has been a corrupt attempt to obstruct the due course of public justice by "*spiriting*" away or preventing the attendance of a witness. If the person induced to absent himself, knew of his being a witness and was induced to absent himself, the offence was complete in him. If the respondent knew of his being a witness and about to be compelled in due course of law to attend the trial, and endeavored to dissuade and hinder him therefrom, in the language of the indictment, his offence is complete. In this case, knowledge is carried home to both. It will not do, for a moment, to admit that the respondent might anticipate the officers of justice, and secrete, bribe or intimidate the state witnesses from attending the trial of public prosecutions, and not be liable for any act done, until a subpœna had been legally served upon the witness. This view will leave untouched the most corrupting field for offences of this character. It is further argued that the information is insufficient, because it contains no allegation that the offence was consummated, but only an *attempt* to hinder the witness from attending the trial. This question was formerly much discussed in Westminster Hall, but is now well settled.

FRANKLIN,
January,
1836.

State
vs.
Keyes.

The case above cited from C. L. R. (*Bushell* vs. *Barrett*) shows that a conspiracy to bribe a witness, to induce him not to give his attendance upon court, is held not only a high misdemeanor, but an infamous offence. And the doing of any act tending to obstruct the due course of public justice, has always been held indictable as a misdemeanor at common law. Bribing, intimidating or persuading a witness not to testify, or not to attend court, are each among the readiest and the most corrupting of this class of misdemeanors. The mere intent to commit a misdemeanor, or even a felony, until evidenced by some *act*, is not indictable, for a very sufficient reason, that human tribunals cannot take any just cognizance of human thoughts or intentions, except so far as they are expressed in their actions; and except in times of flagrant misrule and tyranny, this has never been attempted. But it is well settled at common law, that an *attempt* or *endeavor* to commit a felony or misdemeanor, is punishable itself, as a substantive misdemeanor. An attempt to bribe the first Lord of the treasury, to procure the reversion of the office of clerk of the supreme court of Jamaica, was in Lord Mansfield's time held clearly indictable. —*Box* vs. *Vaughn*, 4 Burr 2494 See also Plympton's cases, 28, Ray. 1377, and 1 Russell on Crimes 45, 46. It is equally well settled, that an endeavor to induce another to commit a felony or misdemeanor, is indictable as a common law offence.—*Rex* vs. *Philips*, 6 East. 464.

The soliciting another to embezzle his master's money, was held clearly indictable.—*Rex* vs. *Higgins*, 2 East. 5—See also the cases there cited. In reason, a criminal intent and an *act* in furtherance of the intent, whether success follow or not, is deserving of the same degree of punishment, almost as if the principal offence had been consummated. Assaults with intent to murder or to commit rape, are by statute punished with great severity, as substantive offences. And we feel no hesitation in saying, that the attempt to commit an offence or the soliciting another to commit an offence, should (with few exceptions not necessary to be enumerated here, resting upon peculiar grounds) be held indictable, as misdemeanors at common law. This disposes of all the objections urged against the indictment.

The respondent not being in court to receive sentence, the bonds, on motion of the state's attorney, estreated.