SELLERS *et al. v.* STATE.

[90 South..455, In Banc. No. 22099.]

CONTEMPT. *Inducing prospective witness not under recognizance and not subpoenaed to leave jurisdiction does not constitute contempt.*

An attempt to induce a prospective witness to leave the jurisdiction of the court will not constitute a contempt of court, where such witness is not under recognizance to appear before the court, and no subpoena has been issued for him.

ETHRIDGE, J., dissenting.

APPEAL from circuit court of Perry county.

HON. R. S. HALL, Judge.

E. C. Sellers and another were tried and convicted for contempt of court, and they appeal. Reversed, and appellants discharged.

*Wells, Stevens & Jones* and *D. K. McDonald,* for appellants.

*D. C. Enochs,* assistant attorney-general, for the state.

COOK, J., delivered the opinion of the court.

At the April, 1921, term of the circuit court of Perry county, the appellants were tried and convicted for a contempt of court, and from a judgment sentencing them to pay a fine of one hundred dollars and to serve a term of thirty days in the county jail they prosecute this appeal.

This conviction was based on an information filed in said court by the district attorney, alleging that appellants, at a time when one Lewis Sellers was under bond to await the action of the grand jury on a charge of murder, attempted by threats and an offer to bribe to induce certain witnesses against the said Sellers to leave the jurisdiction of the court for the purpose of preventing them from appearing before the grand jury.

The facts as developed at the trial, and which are necessary to be stated for the purpose of this decision, are as follows: Lewis Sellers was bound over by a justice of the peace to await the action of the grand jury on a charge of murder; the two persons who were alleged to have been approached by appellants were witnesses for the state at the preliminary trial in the justice court; at the time of the preliminary trial the justice of the peace informed these witnesses that they would be expected to appear before the grand jury at the next term of the circuit court, but they were not placed under recognizance to so appear. Immediately after this preliminary trial in the justice court, these witnesses voluntarily moved out of the county and the judicial district in which the county is situated. Thereafter, and before the convening of the circuit court, the act charged against appellants were committed. At the time of the commission of the acts alleged as a contempt, no process had been issued for or served on these witnesses, no grand jury had convened, and no court was sitting.

The acts complained of were not committed in the presence of the court, and the supposed contempt was, of course, constructive. The supposed witnesses might or

might not have been subpœnaed in the future, but at the time of the commission of the acts complained of no process had been served on them, and none had been issued for them. They were under no sort of legal compulsion to attend the court when it convened or to appear before the grand jury, and if they had failed to attend the court they would not themselves have been guilty of contempt. The court had awarded no process, given no judgment, made no order or done any act which appellants have incited others to defeat or disobey. There was no defiance, breach, or evasion of any order, decree, or process of the court, and no attempt to incite others to evade any order or process of the court, and, this being true, we do not think the acts alleged to have been committed constitute a contempt.

That there must be process for the witness before there can be contempt in attempting to induce the supposed witness to absent himself finds support in the cases of *Dobbs* v. *State,* 55 Ga. 272; *McConnell* v. *State,* 46 Ind. 298; and *Scott* v. *State,* 109 Tenn. 390, 71 S. W. 824. In *Dobbs* v. *State, supra,* which was a contempt proceeding against one charged with offering a bribe to have witnesses warned to avoid service of subpœnas, the subpœnas had been issued in blank, and the court there said:

"We are clear, too, that a subpœna issued in blank is not a valid process on which to predicate such action."

In *McConnell* v. *State, supra,* the Indiana court said:

"The supposed contempt was constructive and not direct. . . . The theory that in such case an affidavit should be filed implies that all the facts necessary to constitute the contempt should be stated in the affidavit. Thus tested, the affidavit is defective and insufficient. The witness does not appear to have been subpœnaed to attend before the grand jury, and, until he was subpœnaed, or until there was a subpœna isued for him, it was clearly no contempt for the appellant to induce him to absent himself in order that he might not be subpœned. Until there was a subpœna issued for the witness, there was no process

of the court to be evaded. There can be no contempt in evading, or in inducing another to evade, process that has not issued."

*In Scott* v. *State, supra,* the Tennessee court reversed a judgment of conviction saying:

"Nevertheless, the judgment of that court must be reversed on this ground, because, if in fact no subpœna for Charley Johnson was ever issued, he could not be made a legal witness, and so bound to appear (*Hatfield's Case,* 3 Head, 233) ; and the defendants, in that view, committed no contempt of court in inducing him to leave this state and go into the state of Alabama to keep from testifying. It is unnecessary to determine whether the facts stated would support an indictment, as the matter before us is whether these facts would make out a case of contempt of court, this being a contempt proceeding."

The contrary view is held in *Montgomery* v. *Circuit Judge,* 100 Mich. 436, 59 N. W. 148. In support of its holding the Michigan court cited *State* v. *Keyes,* 8 Vt. 57, 30 Am. Dec. 450; *State* v. *Horner,* 1 Marv. (Del.) 504, 26 Atl. 73, 41 Atl. 139, and *State* v. *Tisdale,* 41 La. Ann. 339, 6 So. 579, and approved and adopted the reasoning of the Louisiana court in the Tisdale case. An examination of the three cases cited from Vermont, Delaware, and Louisiana discloses the fact that each of these presented a case of an indictment for obstructing justice and not a contempt proceeding. If the case before us was based upon an indictment for the statutory offense of obstructing justice a very different question would be presented.

It follows from the views herein expressed that the judgment of the court below will be reversed, and appellants discharged.

*Reversed and appellants discharged.*

ETHRIDGE, J., dissents.

I have reached the conclusion that the judgment should be affirmed, and shall set forth my views, which are not in harmony with those of the majority.

One Lewis Sellers, son of the appellant, E. C. Sellers, was tried in a preliminary trial before a justice of the peace for the killing of one Cox. At the preliminary trial Ella Stollenwork and Lena Cox testified as witnesses for the prosecution against the said Lewis Sellers, who was by the justice of the peace placed under bond to await the action of the grand jury; at the same time the justice of the peace notified these two state witnesses to appear at the next term of the circuit court and go before the grand jury. There was only one other state witness, in this prosecution before the justice of the peace, who was a small negro boy. E. C. Sellers, with full knowledge of these facts, approached the witnesses Ella Stollenwork and Lena Cox, and tried to hire them to absent themselves from the circuit court and from the county so that they could not be served with summons to appear before the grand jury, offering to pay them money. The defendant Jefcoats subsequently went to the house of the said witnesses at night, and sought to obtain from them information as to what they were going to do about what the "old man" requested them to. These witnesses refused to go out and talk to Jefcoats, who told the witnesses to "go ahead and do what you are going to do." The witness Ella Stollenwork replied: "I am not going to do what he said do." Jefcoats then said:

"You can do just as you please; it is up to you. You can stay here or go, but you will stay here only no later than Friday night; you will go some way or the other; you must go dead or alive."

The witnesses refused to secret or absent themselves as requested, but placed themselves under the protection of the sheriff of an adjoining county from where the homicide was triable, and appeared before the grand jury. At the term at which the grand jury returned a bill of indictment the district attorney filed an information, charging the appellants with a contempt, of which they were tried and convicted as stated in the original opinion. In my opinion these acts constitute a contempt of court.

In *Aarons* v. *State*, 105 Miss. 402, 62 So. 419, Ann. Cas. 1916E, 263, which was a contempt case, Aarons secreted himself at the instance of a brother of a man charged with murder. The defendant in the murder case, McDaniel, was arrested while the court was in session, and two or three days thereafter had a subpœna issued for the appellant as a witness in his behalf. This subpœna was returned, "Not found," and when the McDaniel Case came on for trial he secured a continuance on the ground of the absence of the witness Aarons. The court found that Aarons was secreting himself for the purpose of avoiding the service of the subpœna with knowledge that such subpœna would be issued for him subsequent to the time when he concealed or secreted himself. The court said:

"This conduct of appellant was calculated and intended to impede, embarrass, and obstruct the administration of justice, and therefore constitutes constructive contempt of court"—citing *Durham* v. *State*, 97 Miss. 549, 52 So. 627, in which case the court defined a contempt in the following language: "Any act calculated to impede, embarrass, defeat, or obstruct the administration of courts of justice, if committed without and beyond its actual presence, is a constructive contempt, and the court has an inherent right to punish such acts; but, before the court can inflict punishment, the offense must be judicially established."

The Constitution and laws of this state require a circuit court to be held in each county at least twice each year, at which terms, or at least two of such terms, a grand jury is empaneled to inquire into the violations of the laws of the state and to make returns of indictments for violation of the criminal laws.

By section 1533, Code of 1906 (section 1295, Hemingway's Code), conservators of the peace have power to bind over for appearance in the circuit court persons who have committed a felony, and they are required to commit in unbailable cases. By section 1535, Code of 1906 (section 1297, Hemingway's Code), the conservator of the peace

or recognizance to appear to give evidence touching the offense in the circuit court.

It is clear that it was the duty of the said witnesses to appear before the grand jury at the next term thereof even though they were not formally placed under bond, but they were directed by the officer having the power to require them to appear to do so. Under the law the time and place for their appearance was clearly fixed, and it was certainly known to all the parties that at that term of the court it would be the duty of the grand jury to make an investigation of the alleged charge for which Lewis Sellers was bound over by the justice of the peace. This was clearly understood by E. C. Sellers and by Ben Jefcoats. Without witnesses the grand jury certainly would be unable to return an indictment and without an indictment the circuit court could not try Lewis Sellers for the killing of Cox.

It has never been my understanding that a witness is required to be subpoenaed before he becomes a witness. A witness is one who has knowledge of the fact in issue or relevant to the issue or concerning some matter which will or may be legally investigated, and who is competent to testify thereto. It is knowledge of the fact that makes him a witness, and not the service of the subpoena. The subpoena is merely the legal method of securing his attendance at the trial or at the investigation in cases before the grand jury. In Law of Witnesses by Rapalje, p. 515, section 301, under head of Modes of Securing Attendance, it is said:

"The ordinary process for obtaining the attendance of a witness is the writ of subpoena, which it is in the power of all courts having authority to hear and determine issues, whether civil or criminal, to issue; and its issuance is not a matter of discretion, but of right. The subpoena is a judicial writ directed to the witness, commanding him to appear at the court to testify what he knows in the cause therein described, pending in such court, under a certain penalty mentioned in the writ."

A witness as defined by Mr. Black in his Law Dictionary is as follows:

"In the primary sense of the word, a witness is a person who has knowledge of an event. As the most direct mode of acquiring knowledge of an event is by seeing it, 'a witness' has acquired the sense of a person who is present at and observes a transaction."

Mr. Bouvier's Law Dictionary describes a witness · as follows: "One who testifies to what he knows. One who testifies under oath to something which he knows at first hand."

In 8 Words and Phrases, p. 7511, a witness is defined as follows: "A witness is one who has knowledge of the fact" —citing *State* v. *Desforges,* 17 So. 811, 820, 47 La. Ann. 1167.

And again: "A witness is one who has knowledge of a fact or occurrence sufficient to testify in respect to it."

There are various definitions of a witness as applied to various transactions, but I think as applied to a witness in court the foregoing definitions convey the correct idea. It is what a man knows that makes him a witness, and not the fact that some process has been served upon him.

It has been specifically held in a number of cases that it is not necessary to have a subpœna in order to punish one for interfering with the administration of justice by tampering with a witness, either bribing or intimidating him. In *Montgomery* v. *Circuit Judge,* 100 Mich. 436, 59 N. W. 148, the supreme court of Michigan distinctly held that a person is guilty of contempt of court who unlawfully detains a witness in going to or returning from or remaining at court, and it is immaterial whether the witness was summoned or not. The court in discussing the subject, at page 441 of the Michigan Report (59 N. W. 149), said:

"3. It is contended that the attempt to prevent the attendance of one not yet subpœnaed as a witness is not a contempt of court. The statute (How. Stat. section 7257) provides that:

" 'Every court of record shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a case or matter depending in such court, or triable therein, may be defeated, impaired, impeded, or prejudiced, in the following cases: . . . For unlawfully detaining any witness or party to a suit while going to, remaining at, or returning from the court, where such suit shall be noticed for trial; and for any other unlawful interference with the process or proceedings in any action.'

"It is contended that one cannot be guilty of detaining a witness until subpœnaed to appear, and this seems to have been the ground of the circuit judge's decision. But we do not think the statute should be so construed. A statute of Louisiana (section 880, Rev. Stat.) provides that—

" 'Whoever shall be convicted of bribery or attempting to bribe any witness, or by any force, or threat, or intimidation of any kind, or by persuasion, to prevent any witness in a criminal case, in any of the stages of prosecution, from making the oath in any order to obtain a warrant of arrest to the final trial, inclusive, from appearing or testifying as a witness, shall be sentenced,' etc.

"It was contended that a person is not to be deemed a witness under this section until a summons has been served on such person to appear at some stage of a civil or criminal trial or prosecution. The court say:

" 'The construction of this statute which is insisted upon by the defendant's counsel is too strained and technical, and the requested instruction to the jury was properly refused. While it is true that, for many purposes in the course of judicial proceedings, one cannot be treated *as* a witness until he has been regularly summoned, it does not follow that he may not be *a witness,* notwithstanding process has not been issued for his attendance as such in a given case. For instance, one cannot be attached and fined for nonattendance until a summons is first produced, and the service of it duly proved. Until a summons is pro-

duced, and due proof made of attendance as a witness, one cannot obtain a certificate entitling him to compensation for services. Yet such person may be called and sworn as a witness, and his testimony taken in a case, though he has not been summoned.    .    .    . Surely, it does not require argument to demonstrate that the conduct of Tisdale was just as reprehensible as though Oliver had been regularly summoned as a witness to appear before the grand jury, and that to his knowledge. The *effect* of intimidation in either case is just the same, and the *motive* which superinduced it likewise the same. Evidently the legislature intended to prevent and suppress *such* practices, and imposed severe penalties upon those violating its behest; and we deem it our imperative duty to rigorously enforce them.' *State* v. *Tisdale,* 41 La. Ann. 339.

"We fully approve of the reasoning in this case. See, also, *State* v. *Keyes,* 8 Vt. 57; *State* v. *Horner* (Del.), 26 Atl. 75."

To the same effect is the case of *In re Brule* (D. C.), 71 Fed. 943. Judge HAWLEY in that case dealt with the proposition in the following language:

"1. It is contended that preventing the attendance of a person not subpœnaed as a witness is not a contempt of court. This construction of the statute is too strained and technical to be sustained. The statute applies to all cases where a person who it is known will be a witness at the trial is solicited and bribed to hide, or to absent himself from the place of trial, or to secrete himself so that he cannot be subpœnaed, and any person so persuading, inducing, and bribing him is guilty of contempt and a violation of the law, whether or not the witness has been subpœnaed or recognized at the trial. That such acts constitute a crime punishable by indictment is well settled. *Montgomery* v. *Circuit Judge,* 100 Mich. 437, 441, 59 N. W. 148; *State* v. *Tisdale,* 41 La. Ann. 338, 6 So. 579; *State* v. *Horner* (Del.), 26 Atl. 73. In *Montgomery* v. *Circuit Judge,* the court held that the contention that the attempt to prevent the attendance of one not yet subpœnaed as a

witness is not a contempt of court, under How. Ann. St. section 7257, subd. 4 (which provides for the punishment of any person guilty of unlawfully detaining any witness to a suit while going to, remaining at, or returning from the court where such suit shall be noticed for trial), is untenable. In *State* v. *Tisdale,* the court, reviewing the statutes of Louisiana, said—

" 'That the legislature intended that any person tampering with, bribing, or intimidating a known witness, whether summoned as such at the time, or not, should be punished, but that such witness, who should yield to such bribery or persuasion, could not be punished therefor unless he was at the time a duly summoned witness. This distinction is certainly a proper one, because there can be no difference to the person tendering the bribe, or resorting to the intimidation, whether the person prevented from testifying was summoned or not, as in either event the evidence is gotten rid of, while, on the other hand, the person bribed or persuaded, being duly summoned as a witness, occupies altogether a different position from the one he occupied before he was summoned.'

"Applying this reason to the facts of this case, it certainly does not require any argument to show that the conduct of Brule was pust as reprehensible as though Langevin had been regularly subpœnaed as a witness to attend at the trial of the case of *The United States* v. *Heney.* As was said in *State* v. *Tisdale,* 'the effect of intimidation in either case is just the same, and the motive which superinduced it likewise the same.'

"In *State* v. *Horner* the court, with reference to this question, said the object of the existence of courts—'is the ascertainment of truth in its relations to the transactions of men, and they can only do so fairly and impartially when all persons having knowledge of the transactions inquired of are brought or allowed to come before them for examination, without let or hindrance from any one. If interested witnesses are to be kept away by intimidation, persuasion, or bribery, then our courts cannot perform

their high functions, and the powers intrusted to them by the people will fall from their nerveless grasp. They will not longer preserve either their own self-respect, or the respect of the community.'

"See, also, *State* v. *Keyes,* 8 Vt. 66; 2 Whart. Cr. Law, section 2287."

Perhaps the best discussion of the subject is found in *State* v. *Keyes,* 8 Vt. 57, 30 Am. Dec. 450, which case was a prosecution for obstructing justice by inducing a witness to abscond and refrain from appearing before the court to testify the truth and give evidence before the court, with intent to obstruct and impede the due course of justice. At page 65 of 8 Vt. (30 Am. Dec. 450) the court said:

"But the respondent further moved the court in arrest of judgment for the insufficiency of the information. It is said, there having been no subpœna served upon the person, he cannot be considered in the light of a witness. But it will be difficult to say, just when the person will become so far a witness that it will be an offense to hinder him from giving his attendance upon the court. *The essence of the offense is obstructing the due course of justice.* This has always been held indictable, as a misdemeanor, at common law. *Whether the witness had been served with a subpoena or not, cannot be esteemed very material.* The effect of the act and intent of the offender is the same, whether the witness has been or is about to be served with a subpœna, or is about to attend in obedience to a voluntary promise. Any attempt, in either case, to hinder his attendance, is equally criminal and equally merits punishment. . . . If the person induced to absent himself, knew of his being a witness and was induced to absent himself, the offense was complete in him. If the respondent knew of his being a witness and about to be compelled in due course of law to attend the trial, and endeavored to dissuade and hinder him therefrom, in the language of the indictment, his offense is complete. In this case, knowl-

edge is carried home to both. It will not do, for a moment, to admit that the respondent might anticipate the officers of justice, and secrete, bribe or intimidate the state witnesses from attending the trial of public . prosecutions, and not be liable for any act done, until a subpœna had been legally served upon the witness. This view will leave untouched the most corrupting field for offenses of this character. It is further argued that the information is insufficient, because it contains no allegation that the offense was consummated, but only an attempt to hinder the witness from attending the trial. This question was formerly much discussed in Westminster Hall, but is now well settled."

It was a contempt at common law to keep a witness out of the way, and thereby impede the service of subpoena. *Clements* v. *Williams,* 2 Scott, p. 814, 30 E. C. L. 667.

It was held by the supreme court of Kansas in *State* v. *Sills,* 85 Kan. 830, 118 Pac. 867, that to be a witness did not require that the person should be subpœnaed. That was a prosecution under statute providing that every person who shall by bribery, menace, or other means, directly or indirectly, induce any witness to absent himself or avoid a subpoena or other process, or to withhold his evidence, or shall deter or attempt to deter him from appearing to give evidence in a case, civil or criminal, shall be guilty of a misdemeanor.

In *Commonwealth* v. *Berry,* 141 Ky. 477, 133 S. W. 212, 33 L. R. A. (N. S.) 976, Ann. Cas. 1912C, 516, it was held that one who persuades a person having knowledge of the commission of the crime to leave the jurisdiction of the court without disclosing his knowledge to the grand jury is guilty of obstructing justice, although such person had not been subpœnaed and was under no obligation to appear before the grand jury. The Chief Justice, speaking for the court, said :

"No brief has been filed for the appellee, but it seems that the circuit court sustained the demurrer to the indictment on the ground that it does not show that the witness had

been subpœnaed or was legally bound to appear before the grand jury. Grand juries are impaneled to inquire into offenses committed in their counties. If persons may with impunity spirit away the witnesses before they can be legally summoned, the effectiveness of grand juries would be practically destroyed. Those who conduct gaming houses and the like may anticipate that the grand jury will investigate these matters, and if they may spirit away the witnesses just before the grand jury meets, legal prosecutions of these matters may be thus stifled. The obstruction of legal justice was a misdemeanor at common law, and the spiriting away of a witness to prevent him from testifying was always regarded as a phase of the offense."

In a case note appended to the L. R. A. report of this case the learned editor said:

"It seems to be well settled, although the decisions are not numerous, that one who procures a person having knowledge of an offense to leave the jurisdiction of the court to avoid giving evidence is guilty of obstructing public justice, although such person has not been subpœnaed or bound by recognizance to appear as a witness. *This offense being one against the very object and purposes for which courts are established, and not merely against their process,* it is immaterial that the person procured to absent himself had not been regularly summoned or legally bound to attend as a witness." (Italics ours.)

I call attention to the authorities cited in this note in L. R. A., in addition to those hereinbefore cited upon this proposition. I do not see how there can be a distinction in the meaning of the term "witness" when a contempt proceeding is being tried and when an offense under indictment for obstructing justice is being tried. If process is essential in one case to constitute a person a witness, it would be essential in the other case. A witness in each case is identically the same.

The cases relied on in the majority opinion give no satisfactory reason and cite practically no authority. It is a mere statement in the Georgia and Indiana cases of

the opinion of the court that a subpœna was necessary. Whether those opinions were founded upon statutes or upon the common law does not appear.

In *Scott* v. *State,* 109 Tenn. 390, 71 S. W. 824, the decision was founded upon the fact that in Tennessee the court was limited to the statutory power conferred on it to punish for contempt, and that statute required a subpœna to be issued to constitute a contempt. The general rule is that the constitutional courts have inherent power to punish for contempt, and the general rule is that this inherent power cannot be destroyed or abridged by the legislature. See *C. B. & Q. Railroad* v. *Gildersleeve,* 219 Mo. 170, 118 S. W. 86, 16 Ann. Cas. 749, and case note at page 759 of the Ann. Cas., wherein the authorities are elaborately reviewed. The case note makes the following statement:

"The rule is well settled that the legislature of a state cannot abridge or destroy the power of a court created by the Constitution to punish for a contempt of court."

In the course of the note the editor said: "In Mississippi the general rule appears to be departed from, and it is held that the power of courts to punish for contempt is subject to the control of the legislature"—citing *Ex parte Hickey,* 4 Smedes & M. 751.

I desire to call attention to the fact that *Ex parte Hickey, supra,* is not a decision of this court, but is a mere opinion of the judge sitting as a *habeas corpus* court. The announcement on this point in that case is directly contradictory of the opinion in the case of *Watson* v. *Williams,* 36 Miss. 331.

In *Watson* v. *Williams,* 36 Miss. 331, where the court announced the doctrine that the right of punishing contempts by a summary conviction is a necessary attribute of judicial power, inherent in all courts of justice, from the very nature of their organization, and essential to their existence and protection, and to the due administration of justice. It is a trust given to the courts, not for themselves, but for the people, whose laws they enforce and whose au-

thority they exercise; and each court has the power for itself, finally to adjudicate and punish contempts without interference from any other.

See, also, *State* v. *Shepherd,* 177 Mo. 205, 76 S. W. 79, 99 Am. St. Rep. 624, where the doctrine is elaborately discussed and the whole subject of contempt dealt with in an able and exhaustive manner. This case announces the doctrine that direct and constructive contempts are differentiated only by the procedure to establish the contempts. It draws attention also to differences between those acts which go to the power of the court itself and affects its whole existence and those powers which only interfere with its process and orders.

See, also, *Burdett* v. *Commonwealth,* 103 Va. 838, 48 S. E. 879, 68 L. R. A. 251, 106 Am. St. Rep. 916, where the doctrine of direct and constructive contempts are discussed, showing that there is no difference in the power of the court to punish for a direct and constructive contempt, but the difference is only one of procedure, and also discusses the inherent power of the court in this respect.

So in the present case we are not limited to the statute, but we have the power to protect the court, which is conferred by necessary implication from the adoption of the Constitution giving the judicial power to the courts, which carries with it all the necessary incidents to make it effective and to enable it to function.

The fact that the efforts to bribe and intimidate the witnesses occurred in Greene county instead of Perry county, where the court would convene, would not prevent the court from trying the appellants for contempt, because the process of the court reaches to every part of the state, and it would be immaterial where the party was located at the time if the direct tendency of his acts and conduct was to abridge, hinder, delay, or obstruct the court proceeding with its proper business. It was held in *Farmers' State Bank* v. *Oklahoma,* 13 Okla. Cr. 283, 164 Pac. 132, L. R. A. 1917E, p. 551, that the court has power to punish for contempts committed beyond its jurisdiction. See, also,

authorities cited in the case note to the L. R. A. at page 553.

It is difficult for me to perceive how the circuit court can enforce the criminal laws if the witnesses may lawfully do what was done in the present case under similar circumstances. A court would be hindered, delayed, obstructed, and its power to function thwarted in every instance where the law violators and their friends could bribe or intimidate the witness; for, if it was lawful to do what was done in this case, it would be impossible to administer justice in many cases. No person has a right to interfere with the administration of justice. The power of the courts to punish for contempt is given them for public purposes. It is for the protection of the public that the power is conferred and is exercised. No strained construction or restricted view should be taken of those powers out of any tenderness toward law violators and their friends. I think the decision in this case is one of great magnitude and far-reaching consequences, and for that reason quoted I have extensively from the authorities.