KNOX *v.* STATE.

(Division B.   June 8, 1931.)

[135 So. 206.   No. 29513.]

Barbour & Henry, of Yazoo City, and **Watkins, Watkins & Eager,** of Jackson, for appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant was under indictment in the circuit court of Hinds county, and his case was set for trial in the judicial week beginning on the 18th day of December, 1929. Because of prior events, and because of rumors and reports which had been brought to appellant, none of which are necessary to mention here, appellant had become apprehensive, although unduly so, that in the bringing in of talesmen by the sheriff or his deputies men would be

brought who would not be impartial in the trial of the case, but who, on the contrary, would be predisposed against any defense which appellant might make. In this state of apprehension, appellant, on Sunday, December 17, 1929, by the use principally of the city directory and the book of telephone subscribers, made up a tentative list of sixty names of those thought to be in all respects well qualified as jurors, the names extending alphabetically from B to W. They were taken from the various respectable walks of life; there were insurance agents, automobile dealers, bankers, persons engaged in the mercantile business, barbers, printers, and men from many other trades and occupations. They were all of worthy character, of good reputation, and none of them had been approached or were approachable. No influence of any kind had been brought to bear upon them; not a word had been spoken to one of them by appellant or by any person connected with appellant, in respect to the case, and not one of them knew or had any reason to suspect that his name had been placed on such a list until more than a year thereafter. More than forty of these names were either then already in the jury box or have subsequently been selected by the board of supervisors and placed therein. Appellant knew personally only a small minority of them and had no intimate or close acquaintance with any of them. There were no business ties which connected appellant with any of them, and no other connection which would be sufficient to induce them or any of them in his favor. No question is raised by the state touching the character of the men on said list, but it is admitted that they are typical of those worthy in every way to sit in judgment on juries. Indeed, none of the facts herein stated are disputed. On the contrary, all the facts are agreed upon in the record and in the briefs; so that what we state herein as the facts is an abstract from what is not in dispute but is admitted in the records and briefs.

After this list had been prepared, and on the evening of said December 17th, appellant made an engagement with the sheriff, by which appellant went to the residence of the sheriff and there appellant handed the said list to the officer. The testimony of the sheriff as to the conversation which took place on that occasion would indicate that little was in fact said, but certain it is that appellant resorted to no threat, nor intimidation, nor other lawless means to induce the sheriff to use said list. The sheriff does not say that he was even requested to use it, and so far as the testimony of the sheriff goes the request to use said list comes only by the inference arising out of the fact that the list was delivered, while the testimony of appellant is that his sole purpose in exhibiting the list was to indicate the type and character of men, who in the trial of appellant's case or any other case would be intelligent and fair and impartial.

The sheriff took the list, made no promise, was not asked to make any, and on impaneling the jury the sheriff disregarded the said list. However, he reported the incident to the circuit judge, as a result of which proceedings in contempt were instituted, some time later, against appellant by the district attorney, and on the hearing thereof the court adjudged appellant guilty and imposed sentence.

The most complete and elaborate treatise now in existence on the subject of contempts is found in 13 C. J. This text states, on page 23 of that volume, that "all effort to influence the action of officers in the selection of the personnel of the jury is contempt"; and on page 8 the unqualified further statement is made that "the determination as to whether a contempt has been committed does not depend on the intention of the offending party but on the act done." If the above unqualified statements be exact statements of the law, then the action of the eminent jurists who presided in this case was correct and the judgment must be affirmed; for it is admitted that

appellant handed the list of names to the sheriff, and it is not denied that thereby there was an effort to influence the officer in the selection of the personnel of the jury, as indeed it could not be denied that the admitted act was an effort toward the stated effect.

The action and judicial decision of a trial judge, in so far as concerns his judgment upon a question of law, may be considered as justified when, in the absence of a decision by the Supreme Court of the state on the exact point, he follows the statement of the law on the point, as laid down in a standard text-book, such as the treatise above mentioned. But when a text-book statement comes before us here on appeal, it becomes our imperative duty, as the court of last resort, to carefully re-examine that text, and in the light of our own jurisprudence to lay it along-side the yard stick of sound, practical, judicial reason, and thereupon to determine and say whether, in our independent opinion, the said text measures out as a correct, exact, and full statement of our law.

Looking then first to our own jurisprudence, we find that our court has defined a constructive contempt as any act calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of courts of justice, when the act is done beyond the presence of the court. Durham v. State, 97 Miss. 549, 552, 52 So. 627; Grace v. State, 108 Miss. 767, 773, 67 So. 212; Aarons v. State, 105 Miss. 402, 405, 62 So. 419, Ann. Cas. 1916E, 263. We compare this with the text-book statement first above quoted, viz., ''All effort to influence the action of officers in the selection of the personnel of the jury is contempt;'' whence it will at once appear that, in order that the last-quoted statement shall stand as a correct, exact, and full statement of the law, it must be upon the conclusion that any effort to influence the action of officers in the selection of the personnel of the jury is an act calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of courts of justice. But does the latter follow, ipso

facto, upon and as a consequence solely of the first? If so, then every lawyer was guilty of contempt, who on occasions has appealed to the sheriff or to a deputy sheriff not to call upon a jury any of that class of idle and untrustworthy persons who often hang around the courtroom and in its environs with the purpose and hope of being called as talesman; and we doubt if there be today in this state any lawyer of large practice and long experience who has not at some time in the interest of justice been compelled to make such an appeal to the sheriff.

We reject, therefore, the unqualified statement that any effort to influence the action of officers in the selection of the personnel of the jury is contempt, and hold that, in order that such an effort shall be a contempt, it must be calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of justice. And thus there is brought to exact issue the question here: A party under indictment, or his attorney, being sincerely apprehensive in respect to the class of talesmen that may be called, prepares a list of trustworthy, responsible, and patriotic men, qualified in all respects under the law as jurors—none of whom have been approached, with none of whom the party has any business or other associations or connecting ties, none of whom are of such character as that they could be approached or wrongfully influenced, and none of them know of their names being so used—and the list so prepared is handed to the sheriff with the request, express or implied, that the men therein named or such as are thereby typified be summoned in case it should become necessary to call in talesmen. Since, as already said, the act as thus illustrated, and with no more than that, if held to constitute a criminal contempt, must be shown to be calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of justice, the duty devolves upon us, if we should hold in the affirmative, to point out, upon a real and substantial basis of sound and practical judicial reason, in what material

respect the act produces the corrupt effect charged—in what material respect as distinguished from that which is merely technical or else is only illusory. We find ourselves unable, upon the substantial basis mentioned, to point out, under the facts in this case, the requisite corrupt element. On the contrary, so far as we can see, the act, so far as it went in this case, or was intended to go, embraces nothing which in substantial effect would impede justice, or would obstruct, defeat, or corrupt the administration thereof.

Nor can we see that it would embarrass the administration of justice. It might personally embarrass the officer to whom the list is presented and of whom the request is made, but that embarrassment could hardly be serious, unless it was the purpose of the officer to select an unworthy class, different from that typified in the list, in which case, he would deserve embarrassment, for he, in such a case, would be the person who would be calculating to defeat or corrupt justice, not the party who has appealed to him for a fair, upright, and worthy jury. And there could have been no embarrassment here, for the record shows, as appellant now freely concedes in the light of subsequent developments, that there never was any purpose on the part of the sheriff to select other than fair and worthy men. True, the sheriff has perhaps, very naturally, felt some hurt at the imputation implied in the delivery of such a list, and the fearless trial judge doubtless shared that displeasure at the implied imputation against a faithful executive officer of his court; but all that considered, the question nevertheless distinctly remains whether, in view of all the facts and circumstances, there was a criminal contempt of the court, and that question, upon the undisputed facts of this record, we are constrained to answer in the negative.

We must add, however, that, although we are holding that, under the particular facts of this case, the charge of a criminal contempt is not proved beyond a reason-

'able doubt, we are not to be understood as approving the practice whereby litigants or lawyers may make up lists of prospective talesmen and furnish same to the sheriff, however excellent the list may be. On the contrary, we definitely disapprove of the conduct, and for several reasons: First, it is injurious and unjust to those whose names appear on the list, because if and when such a list is made public, or is seen by others, the natural suspicion is thereby aroused that the names on the list are of those who, not only are approachable, but have already been approached; second, the impression is thereby made at least on some members of the public, that the sheriff is available to sinister control, and has in fact been so controlled; third, it furnishes usable material to the professional critic of public men and of public institutions and enables him to widen the circle of his baneful influence. To summarize these and other pertinent reasons, there is thereby an appearance of evil, and in court procedure, not only must actual evil be avoided, but so far as discreetly possible there should be an absence of all the appearances of evil. In this connection, it is to be added further that appellant has frankly admitted error and indiscretion in the respects next above mentioned and has tendered an ample apology to all concerned; and this, as to mere improprieties, less than actual, corrupt, contempt, has been generally considered as a sufficient expurgation, and we must accept it as such in this case.

Reversed and appellant discharged.