SAMMONS *v.* STATE.

(Division B.   Feb. 7, 1938.)

[178 So. 596.   No. 32978.]

**E. F. Coleman**, of Purvis, and **Hall & Hall**, of Columbia, for appellant.

**Russell Wright**, Assistant Attorney-General, for the State.

**Ethridge, P. J.,** delivered the opinion of the court.

The district attorney of Lamar county filed a proceeding in contempt in this case brought against Bill Sammons at the July, 1937, term of the circuit court of Lamar county. In the information it was charged that certain witnesses had been subpoenaed to appear before the grand jury at that term, and the summons had been issued and served on certain witnesses who were boys under age. These boys had bought intoxicating liquors from Sammons, to-wit, whisky. Having no means of conveyance to attend court, they went to see Sammons with a view of having him take them. He had a list of the witnesses for whom summons had been issued and served, including these boys.

The boys discussed with him the matter of what statements it would be advisable for them to make in reference to such sales. One asked him if he could say that they bought beer instead of whisky. One boy testified: "He said to tell we went out and drank beer around once and awhile and never had bought any whisky. He said we could tell it if we wanted to, but he didn't tell us to tell it, but he said we could if we wanted to." Another testified that Bill Sammons told him that he had their names before they got the summons, "and knew we were going to get them." Another testified: "He said we could say we drank beer out there, and never had bought any liquor;" that Sammons knew before they got their summons that they were going to get it; that he noticed the list that Sammons had. Another witness testified that he suggested to Sammons that the boys could say that they bought beer instead of whisky. This was on Saturday before the grand jury met on Monday, being the day on which the three boys went to see Sammons. On this occasion Sammons told witnesses Branton and Hartfield that "We could say we drink beer."

It was further testified that Sammons conveyed the boys to the courthouse, free of charge, and sat around the courthouse while they were before the grand jury. One of the witnesses testified that he had not intended to tell the grand jury the truth, but that they "got close after him;" that, if they had testified that they drank beer instead of whisky, they would have told that which was false.

Several of the witnesses introduced testified to the same effect—that they drank whisky and not beer.

It was manifestly the purpose of this conversation between appellant and these witnesses to prevent the latter from telling the grand jury that they had bought whisky from Sammons, when, in fact, they had bought it. It was testified that Sammons said they could "stick to him;" also that on the way to the courthouse one of the boys suggested that if they were going to stick to him they thought they ought to have a "handout;" but that Sammons said "he wasn't giving out anything," and they could do as they pleased.

At the time of the conversation above set forth, the boys had been summoned as witnesses, which was known to Sammons, and his suggestion that they stick to him and say they drank beer instead of whisky was manifestly for the purpose of preventing an indictment by withholding the truth.

Although the court was not in session at the time the conversation took place, the witnesses had been summoned to attend and testify before the grand jury impaneled for that term. The witnesses were lawfully summoned, and it was plainly contempt of the court to attempt to interfere with the function of the court by suppressing the truth before the grand jury. This is a constructive contempt. See Knox v. State, 160 Miss. 494, 135 So. 206; Sellers v. State, 127 Miss. 748, 90 So. 716, 21 A. L. R. 238.

The judgment of conviction is therefore affirmed.

Affirmed.